## CIAFIRDINI v. UNITED STATES.*

(Circuit Court of Appeals, Fourth Circuit. April 19, 1920.)

No. 1707.

1. **Intoxicating liquors** ⬤⇒**210—Indictment for transportation into prohibition state sufficient.**

An indictment under Reed Amendment, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), for transporting liquor into a prohibition state is not fatally defective because it incorrectly states or fails to state the point from which the shipment started.

2. **Indictment and information** ⬤⇒**121(2)—Denial of bill of particulars not error.**

Denial of a motion for bill of particulars on the second trial of defendant, where the evidence for the government was fully presented on the first trial, *held* not error.

3. **Intoxicating liquors** ⬤⇒**233(2)—Evidence as to possession of liquor admissible in prosecution for interstate shipment.**

Where there was evidence that two packages containing whisky came by mail from Cincinnati to a point in West Virginia to fictitious addresses, but each in care of a post office box, one rented by a brother of defendant, a tailor, and the other by an employé of his, that on the same and the preceding day both the brother and employé sent telegrams to defendant in Cincinnati, inferentially relating to the shipments, and that the packages were addressed by direction of defendant, testimony of a government agent that he found a large quantity of whisky in the brother's shop *held* relevant and competent.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 8, 65 L. Ed. —.

**4. Criminal law ☞369(6)—Evidence as to receipt of other liquor admissible in prosecution for interstate shipment.**

In a prosecution for transporting liquor into a prohibition state, where it was shown that two packages of whisky were received by mail, testimony that similar packages had previously been received addressed to the same post office boxes *held* admissible.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Criminal prosecution by the United States against Pasquale Ciafirdini. Judgment of conviction, and defendant brings error. Affirmed.

Horan & Pettigrew, of Charleston, W. Va., for plaintiff in error. Lon H. Kelly, U. S. Atty., of Sutton, W. Va.

Before PRITCHARD and KNAPP, Circuit Judges, and WATKINS, District Judge.

PRITCHARD, Circuit Judge. This was a criminal action tried in the District Court of the United States for the Southern District of West Virginia, which involves a charge against Pasquale Ciafirdini (defendant below and so referred to hereinafter in this opinion), for violating the act of Congress of March 3, 1917, commonly known as the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), by transporting in interstate commerce through the mails intoxicating liquors from the state of Ohio into the prohibition state of West Virginia.

On the morning of February 20, 1919, two separate but similar packages came by mail from Cincinnati, Ohio, to the post office at Welch, in McDowell county, W. Va., both addressed in the same handwriting, and each containing two ordinary rubber water bottles filled with whisky, and in the aggregate containing about 10 quarts of whisky. Those in the post office discovered that one of the packages contained whisky, by reason of the fact that one of the water bottles had been punctured, or had sprung a leak, rendering the contents readily ascertainable. One package was addressed to Frank Marksell, Box 271, Welch, W. Va., and this was a post office box rented by the postmaster to John Ciafirdini, and was used as a receptacle for mail addressed to Ciafirdini, or the Welch Tailoring Company, which was owned and conducted by Ciafirdini. The other package was addressed to Fredo Fiscer, Box 314, Welch, W. Va., and this was a post office box rented by the postmaster to one G. Terrano, who was a tailor employed at the shop of the Welch Tailoring Company, and an employé of John Ciafirdini. Notices of the arrival of these packages were placed by the postmaster in the respective post office boxes, and G. Terrano, upon receipt of his notice, called for his package, but when he was confronted with the leaking package of whisky, he disclaimed ownership of the same, and asserted that some mistake had been made, although the notification card placed in the box bore the name of the addressee. Within an hour or so afterwards, this same G. Terrano sent a telegram from Welch to the defendant, Pasquale

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Ciafirdini, who is the brother of John Ciafirdini. This telegram was in the Italian language and read:

"Don't ship nothing. Wait for letter."

These packages of whisky left Cincinnati on the evening of February 19th, and were carried in a through mail bag to Welch. On the 19th of February, John Ciafirdini, then at Welch, sent a telegram to his brother, the defendant, then in Cincinnati, which telegram was in the Italian language, and when translated, read:

"You leave to-night. Bring ten. All good.                    John."

The names of the addressees, Frank Marksell and Fredo Fiscer, were fictitious, as no witness ever heard of any person bearing either of those names. A visit to the tailoring shop of John Ciafirdini at Welch by a special agent of the Department of Justice disclosed a secret drawer in the work table in the shop which contained 27 quart bottles filled with whisky, and a metal container fitted snugly inside of what appeared to be a merchant tailor's sample case, in which metal container was found a small quantity of whisky. Several pint bottles of whisky were found in some other part of the shop.

In some way it was learned that the writing on these packages was that of one Joe Diorio, and Diorio was therefore taken into custody, and immediately upon being apprehended stated that he had addressed these two packages at the instance of the defendant, Pasquale Ciafirdini; and the said defendant was therefore indicted and tried at Bluefield, and the jury failing to agree upon a verdict, the case was transferred to Charleston, and upon the second trial, the defendant was convicted and sentenced to be confined in jail for six months and pay a fine of $100. Defendant excepted, and the case comes here on writ of error.

[1] First, we will consider the question as to whether the indictment is demurrable. This question was decided by this court in the case of Malcolm v. United States, 256 Fed. 363, 167 C. C. A. 533. The first point in the syllabus of that case is in the following language:

"An indictment under the Reed Amendment, Act March 3, 1917, for transporting liquor into a prohibition state, is not fatally defective because it incorrectly states the point from which the transportation started."

Judge Knapp, who wrote the opinion, among other things, said:

"The gravamen of the offense charged is the transportation of liquor into a prohibition state, and the place from which it is brought is wholly immaterial. In our judgment it would have been sufficient merely to charge, in the language of the statute, the transportation of the whiskey in question into the state of West Virginia, without naming the particular place, or even the state, from which it was transported."

This, we think, disposes of this point.

[2] Considering the question as to whether the defendant was entitled to a bill of particulars as asked for at the second trial, we think that the court very properly refused to require the government to file a bill of particulars as to the point from which the whisky was shipped. This request was not made until about the time of the second trial,

more than two months having elapsed since the first trial. It appears that in the first trial the prosecution had presented fully the facts involved in this case. Therefore it would have been useless to have furnished a bill of particulars, which, from the very nature of things, could only have been a repetition of the facts which had already been testified to in the presence of the defendant.

[3] It is also insisted by counsel for defendant that the court below erred in admitting the testimony of the witness Hayes, agent for the Department of Justice. We think the testimony of this witness was material, and therefore the court was amply warranted in permitting the same to go to the jury. This evidence shows that shortly after the packages of whisky arrived at Welch, and after the witness had been given those parts of the two wrappers containing the addresses he visited the tailor shop of John Ciafirdini and found in a drawer of the work table 27 quart bottles filled with whisky; that he also found a metal container fitted snugly in what appeared to be a sample case; that inside this container a small quantity of whisky was found; also that he found several pints of whisky in another part of the shop.

It was shown that John Ciafirdini, owner of the shop, and Pasquale Ciafirdini, the defendant, were brothers; that John was the lessee of post office box No. 271, to which one of the packages was addressed, and that this particular box was used as a receptacle to hold mail addressed to John and to the Welch Tailoring Company; and that G. Terrano was an employé of John's, and as such worked in the Welch Tailoring Company's shop, and was the lessee of post office box No. 314, to which the other package was addressed, as will appear by the following testimony of the witness Henritze, postmaster at Welch, W. Va.:

"Q. Do you know a man by the name of Frank Marksell? A. I do not.
"Q. Do you know a man by the name of Fredo Fiscer? A. I do not.
"Q. Have you a box in your post office numbered 271? A. Yes, sir.
"Q. Who has that box, and who had rented it in February of this year? A. It was rented to John Ciafirdini and various names; the Welch Tailoring Company and John Ciafirdini, the latter of whom conducts the tailoring company, the Welch Tailoring Company.
"Q. Did you know John Ciafirdini? A. Yes, sir.
"Q. What business has he in Welch? A. I think he runs a tailoring place; has a tailor shop there.
"Q. And this box 271 was for the mail of John Ciafirdini and the Welch Tailoring Company, as I understand you? A. Yes, sir.
"Q. Did you have a box in your post office numbered 314? A. Yes, sir.
"Q. To whom was that box rented, and by whom was it used during the month of February last? A. The foreign name is G. Terrano, or Tiaronno, I think is the name that we have on the box.
"Q. Do you know Terrano? A. Yes, sir; by sight.
"Q. What was he doing in Welch about that time? A. I think he was working for the Welch Tailoring Company, for I saw him in the place of business there a number of times."

It also appears that the day the packages left Cincinnati a telegram was sent from Welch to the defendant in Italian, which, when translated, reads as follows:

"You leave to-night. Bring ten. All good.                John."

It is very significant that, immediately after G. Terrano had seen the leaky package in the post office, he was observed at the telegraph office; as we have said, a telegram was sent from there to the defendant in Cincinnati, signed "G. T.," which, when translated, reads:

"Don't ship nothing. Wait for letter."

This, the government insists, is a very important circumstance, from which the jury could infer that Terrano, upon the discovery that the package was leaking so as to disclose the character of its contents, became alarmed and telegraphed the shipper to send no more —to "ship nothing," but to "wait for letter," and thus cover up his tracks.

The government also insists that this piece of evidence is pertinent, in that it tends to connect the defendant with the transaction for which he is now indicted, and the contention is further reinforced by the evidence of Diorio, who, among other things, when being asked as to whether he lived in Cincinnati, and as to when he last lived there, said, "Three months ago." He further testified as follows:

"Q. Do you know Pasquale Ciafirdini, the defendant? A. Yes, sir; I do.

"Q. Did you ever direct any packages for him and at his request? A. Yes, sir; I did.

"Q. I hand you herewith a paper wrapping, which bears on it the name of Mr. Frank Marksell, Box 271, Welch, W. Va., and a return card, apparently from John Dela, 822 Main street, Cincinnati, Ohio, and state whether or not you did that writing? A. That is my handwriting.

"Q. And you wrote it? (The paper referred to by the witness was then offered in evidence by the government, marked "Government Exhibit No. 8.") A. Yes, sir.

"Q. Now, I wish you would look at another paper handed to you, with an address on it as follows: Mr. Fredo Fiscer, Box 314, Welch, W. Va.—and also a return card on it from Joe Spino, 1232 Vine street, Cincinnati, Ohio, and state whether or not you did that writing? A. Yes, sir. (The paper referred to was offered in evidence by the government, marked "Government Exhibit No. 9.") * * *

"Q. Were those papers around any packages or wrappers of any packages when you addressed them? A. Well, I guess they were on a package when I addressed it for him.

"Q. About what sized packages were they, Jo? A. Well, I cannot represent exactly what the size they was; but they wasn't very big packages.

"Q. What would you say as to whether they would be as big as those two hot water bottles laid together, as I am laying them there? A. I cannot say exactly, but they was a regular package, but I cannot tell the size. * * *

"Q. Well, about how long was it? Show us with your hands. A. Well, I would say about that big (indicating about two feet).

"Q. Do you know anybody by the name of Fredo Fiscer, or did you know anybody by that name at that time? A. No, sir.

"Q. How did you come to write his name on this paper? A. Because he told me to.

"Q. Who told you? A. Pasquale Ciafirdini.

"Q. And he told you the box number to put on it? A. He did.

"Q. Now, did you know anybody by the name of Frank Marksell? A. No, sir.

"Q. Who told you to write Frank Marksell and the box number there? A. He told me.

"Q. Who do you mean by he? A. Pasquale Ciafirdini.

"Q. Do you know anybody by the name of John Dela, at 822 Main street, Cincinnati, Ohio, or anywhere else? A. No, sir.

"Q. How did you come to put Dela's name there? A. He told me to; Pasquale Ciafirdini.

"Q. Do you know anybody by the name of Joe Spino, or whatever this is, at 1232 Vine street, Cincinnati, Ohio, or anywhere else? A. No, sir.

"Q. Well, how did you come to write that in the center of the package? A. Because Pasquale Ciafirdini told me."

The question for the determination of the jury was as to whether the defendant caused the whisky to be shipped into Welch, or, on the other hand, was Joe Diorio, who admitted having addressed the packages, responsible for the shipment. The government insists that having shown that these packages were being sent to two fictitious persons and addressed to two post office boxes, being used by both Ciafirdinis and the tailoring company and an employé of the company, is a strong circumstance tending to show that the defendant and those operating with him were seeking by stealth to avoid being discovered.

In view of this evidence, the inquiry as to why the whisky should have been sent to the tailoring establishment is very pertinent, and of such character that the jury was, we think, amply warranted in finding as a fact that some of those in charge of the establishment were engaged in illicit handling or dealing in such liquors. We also think, from this evidence, it could be inferred that the brother of the defendant was probably the person who aided him in securing the stock in trade, rather than some stranger. After the relationship had been established between the two brothers, as well as the sending of the telegrams from John and his employé, this showing a course of dealing between these several parties, it certainly became material to show the plan and purpose of the course of dealing in securing the quantities of liquor in question.

In the case of Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996, the court said:

"As intimated in the case of Alexander v. United States, 138 U. S. 353, where the question relates to the tendency of certain testimony to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appear that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors."

[4] Likewise we think that the testimony of the witness Mrs. Herndon, showing that other packages prior to February 20th came to the office addressed in care of those same boxes, was admissible.

The charge of the learned judge who tried this case is very clear and comprehensive, and we think fairly presented the case to the jury. In view of what we have said, we are impelled to the conclusion that the defendant received a fair and impartial trial, and that the judgment of the lower court should be affirmed.