BARNARD v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. May 4, 1908.)

No. 1,499.

1. PERJURY—HOMESTEAD CLAIMS—PROOF—OATH—AUTHORITY TO TAKE—UNITED STATES COMMISSIONERS.

Rev. St. § 2294, as amended by Act Cong. March 4, 1904, c. 394, 33 Stat. 59 (U. S. Comp. St. 1901, p. 467), authorizes proof of homestead claims to be made before United States commissioners in the land district in which the lands are situated, and section 5392 (U. S. Comp. St. 1901, p. 3653) declares that every person who having taken an oath before a competent officer in any case in which the law of the United States authorizes an oath to be administered that he will testify truly, etc., willfully and contrary to his oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury. An indictment for perjury in support of a homestead claim, sworn to before a United States commissioner. alleged that the commissioner was an of-

*Rehearing denied June 10, 1908.

ficer who was authorized by the laws of the United States to administer an oath and take testimony in such proceeding, and was then and there engaged in taking testimony on the application of W. to make final homestead proof, etc.; that it thereupon became material that the commissioner should be informed by the testimony whether W. had settled and resided on the land in good faith; and that, to prevent the commissioner from knowing the true facts, defendant willfully, corruptly, and falsely testified to facts specified which he did not believe to be true. *Held* that, under such allegations the court would take judicial notice that the commissioner had competent authority to administer the oath to defendant in the particular proceeding, and that the indictment was not, therefore, defective for failure to allege the commissioner's authority to administer the oath on which the perjury was based.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perjury, §§ 76–79.]

2. SAME—MATERIALITY.

The indictment also sufficiently alleged that defendant's testimony so given before the commissioner was material.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perjury, §§ 82–89.]

3. CRIMINAL LAW—EVIDENCE—RES GESTÆ.

In a prosecution for perjury committed by defendant in support of W.'s homestead claim, oral statements made by W., indicating that he did not reside on the homestead claimed by him during the time stated in his homestead proof, and during the time defendant testified W. had an established residence on the land, was admissible as res gestæ.

4. SAME—OTHER OFFENSES—DESIGN—KNOWLEDGE—SYSTEM.

In a prosecution for perjury alleged to have been committed by defendant in support of W.'s homestead claim, evidence that witness took up a homestead on public lands in the same section of the state where W. made his claim, and that, though witness never resided on the land, defendant was a witness in his behalf when he (witness) made proof of his residence on the homestead, was admissible to show knowledge, design, and system on defendant's part in furnishing evidence in support of fraudulent land claims.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 825–834.]

5. SAME—WRIT OF ERROR—EVIDENCE—PREJUDICE.

Accused was not prejudiced by the admission of proof in support of his homestead claim, in which he swore that he had continuously resided on land other than the place where he actually resided for the purpose of affecting his reputation for truth and veracity which a witness for accused had previously testified had been good; such homestead proof not being contradicted in any particular.

In Error to the Circuit Court of the United States for the District of Oregon.

The plaintiff in error was charged by indictment in the Circuit Court of the United States for the District of Oregon with the crime of perjury in delivering his testimony as a witness in the matter of the application of one Charles A. Watson to make final proof upon a homestead entry of public lands of the United States in the district of Oregon. The indictment charged that the defendant "came in person before James S. Stewart, who was then and there the duly appointed, qualified, and acting United States commissioner for the district of Oregon, and who was then and there an officer who was authorized by the laws of the United States to administer an oath and to take the testimony of witnesses in the matter of the application of a claimant to make final proof upon a homestead entry of public lands of the United States lying within The Dalles land district of the United States in the said district of Oregon, and the said James S. Stewart, as such United States commissioner for the district of Oregon, was then and there engaged in taking and hearing testimony in the matter of the application of Charles A. Watson, late of said

district of Oregon, to make final proof in support of his homestead entry."
The indictment describes a tract of public land of the United States upon
which it is charged Charles A. Watson had theretofore made a homestead fil-
ing in the land office, and was then and there engaged in making final proof
in support of his homestead entry; that the defendant "then and there * * *
subscribed his name to certain testimony, which had then and there been giv-
en by him before said James S. Stewart, as such United States commissioner
for the district of Oregon, in the matter aforesaid, and that said testimony
so then and there subscribed by him was read to him before being so sub-
scribed, and was then and there sworn to by him as true before said James
S. Stewart, as such United States commissioner for said district of Oregon."
It is alleged that it then and there became material that the said James S.
Stewart, as such United States commissioner and the register and receiver of
the United States land office at The Dalles, should be informed and know
from and by such testimony "whether the said Charles A. Watson had settled
and resided upon and improved or cultivated the said lands so described, as
required by the homestead laws of the United States, and, if so, when such
settlement and residence began and how long it continued, and what was its
character, and whether it commenced in the year 1898 and continued for five
years thereafter, and especially whether the said Charles A. Watson had re-
sided continuously on said land for a period of five years since first establish-
ing residence thereon, and for what period or periods said Charles A. Watson
had been absent from said lands since making settlement thereon, and for
what purpose he was so absent, and whether said Charles A. Watson had
cultivated said land, and how much thereof he had so cultivated, and for
how many seasons he raised crops thereon, and what improvements were on
said land, and what was their value." It is charged that the said defendant
was thereupon in due manner sworn by the said James S. Stewart and made
oath before him of the truth of the matters contained in said testimony so
submitted by him, and to prevent the said James S. Stewart, the United
States commissioner, and the said register and receiver of the United States
Land Office, from knowing the true facts concerning his residence upon and
cultivation and improvement of the said land, willfully, corruptly, and false-
ly, and contrary to his said oath, did depose and swear, as in his testimony
set forth, of and concerning the material facts aforesaid, and did state and
subscribe material matters which he did not then believe to be true. The
testimony of the defendant by question and answer is set forth in full in
the indictment, from which it appears that the defendant made oath that he
knew Charles A. Watson and the land embraced in the homestead entry; that
Watson settled upon the land and established his residence there in the
spring of 1898; that he was unmarried, had resided continuously on the
homestead since establishing his residence thereon, except that he made a
trip to the Willamette Valley in July, 1902, for the benefit of his health and
returned in October, 1902; that defendant lived about eight miles from the
settler's place, and in riding after his live stock he frequently rode past
Watson's place and stopped at his house; that the settler had cultivated about
two acres of the homestead, had raised a garden on it every year since 1898;
that the rest of the land was too steep, rough, and rocky for cultivation; that
he pastured about 25 head of his horses on the place. The improvements on
the land were a lumber house 12 by 16, lumber roof, lumber floor, one room,
ceiled, and papered, good spring water, all fenced with three wires, total value
of improvements about $250, one door and one window. It is alleged in the
indictment that, in truth and in fact, at the time when the defendant so sub-
scribed and swore to the truth of said testimony, that he then and there well
knew that the said Charles A. Watson "had never settled or resided upon or
improved or cultivated the said land, so described, as required by the said
homestead laws of the United States, or in any manner whatever, and had
not settled upon and established actual residence thereon in the year 1898,
or at any other time, and had not resided on said land so described, or any
part thereof, since first establishing residence thereon, except when he made
a trip to the Willamette Valley in July, 1902, for the benefit of his health, or
otherwise or at all, and had not returned to said land and re-established his
actual residence thereon in October, 1902, or at any other time in said year

or in any other year, and had not raised a crop on said land every year from 1898 to 1904, or during any of said years, and had not cultivated two acres of said land." It is charged that the defendant "in manner and form aforesaid, in and by his said testimony, and upon his oath aforesaid, in a case in which the law of the said United States authorized an oath to be administered, unlawfully did willfully, and contrary to his said oath, state and subscribe material matters, which he did not then believe to be true, and thereby did commit wilful and corrupt perjury." The defendant demurred to this indictment on the ground that the matters stated therein were not sufficient in law to constitute a crime. The court overruled the demurrer, and thereafter the cause was tried before a jury, which returned a verdict of "guilty, as charged in the indictment."

In the course of the trial the United States called as a witness one E. A. Putnam, who testified that he knew Charles A. Watson, had seen him in Portland in 1903 at the Merchant's Hotel, about the 28th of April in that year; that he had a conversation with him. The witness, in the course of his examination, was then asked the following question: "State whether or not there was anything in that conversation that showed, or tended to show, where Watson had been about that time or immediately preceding it." To the question the defendant objected, on the ground that it was incompetent, and not in any way binding upon the defendant in the case, and hearsay, and not the best evidence. The court overruled the objection, and admitted the testimony as bearing upon the question as to whether or not Watson did state the truth in regard to the answers that he made in making his proof. The witness answered that Watson said "he had his foot cut at the time. He had been down working on the Columbia river, down about St. Helens somewhere, and said he had come up, and he was going out home, out to his place, out to where his folks lived * * * out towards Forest Grove, out in Washington county."

William Shepard was also called as a witness for the United States, and testified that he had a conversation with Watson at Greenville in 1901, and, over an objection of the defendant, said that Watson spoke of his claim, said that he wanted to go back and prove up, but gave as a reason why he did not "that there was some horses run off that spring, and he says he was hired to do it, and he didn't suppose the settlers wanted him to come back." Watson was not called, and did not testify as a witness in the case.

John Morgan was called as a witness for the United States. He testified that he lived in Wheeler county and took up a claim in that county. Being shown his testimony on final proof in support of the entry, the court inquired as to the purpose, and the United States Attorney said that he proposed to prove a similar act on the part of the defendant, that the witness on the stand took a homestead and made proof, and that the defendant was one of his witnesses and swore to his proof, which he would follow by showing that at the time the witness did not reside and never had resided on the claim. The proof was made in September, 1904. The testimony was admitted over defendant's objection, and the witness testified that he did not reside on the claim and did not cultivate it. The witness was also permitted, over the objection of the defendant, to testify that he took up the claim for the Butte Land, Livestock & Lumber Company.

The transcript of record does not contain all the evidence in the case, but it does contain this statement: "That it should further be certified that there was other testimony on the part of the government tending to show that Watson was in Washington county, Or., in December, 1900, in February, 1901, in May, 1902, and in May, 1903; that Watson had had a conversation with the witness Bledsoe, and had told the witness that he had been in Missouri in the year 1900; that this conversation occurred in July, 1901; that Charles A. Watson had worked for the witness Bradley in March and April of the year 1902; that in August, October, and November, 1898, Watson had transactions with the witness Moore, who conducted a store at Greenville and also in October, November, and December of 1900, and in January, February and May, 1901, and had like transactions with the firm of Moore & Son in March, April, May, June, July, August, and October, 1902; that these were personal transactions with the man Watson over the counter of the store, and the wit-

ness Ireland corroborated the witness Moore. There was evidence from the witness Butler, clerk of Wheeler county, that Watson's name did not appear upon the registration or poll books of that county, and by witness Godman, clerk of Washington county, that Watson had registered in that county under date of the 19th of March, 1902, by the witness Clymer, a postmaster at Fossil, that he had not delivered any mail for Watson, but had been requested by Coe Barnard to put Charlie Watson's mail in Coe Barnard's box; that he did not remember prior to 1903 of Watson ever getting his mail at the post-office in Fossil. There was other testimony to show that Watson had not been seen by the witnesses in Wheeler county at the times or within the periods named in the indictment, except occasionally. It was the testimony of Henry Neal, a witness, that in 1901 he heard Coe Barnard and Cant Zachary talking together about Watson going away from Wheeler county with horses and not having come back, and that Watson had not shown up at that time."

James S. Stewart, United States commissioner, was also called by the United States as a witness. He identified the proof of homestead entry made by Morgan and the fact that the defendant was one of the witnesses. He was thereupon called upon as a witness by the defendant as to the defendant's general reputation in the community where he lived for truth and veracity, which he testified was good. On cross-examination by the United States the witness was asked to identify the final proof in a homestead entry made by the defendant on the 23d of June, 1904, upon the statement of the United States Attorney that he proposed to show that the defendant before the witness as a United States commissioner swore to the fact that he had continuously resided on a homestead other than the place where he did reside. The homestead entry was identified, over the objection of the defendant. On re-direct examination the witness testified that he did not know how much the defendant lived on his claim, nothing except what the defendant swore to in his proof; that he did not know how many improvements he had on the place: did not know whether defendant's family resided on the place or not; did not know any more than what he swore to in his proof: and did not know whether the statements made in his proof were true or false.

Bennett & Sinnott, for plaintiff in error.

Francis J. Heney and Tracy C. Becker, Special Assistants to the Attorney General of the United States, and William C. Bristol, U. S. Atty., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). It is objected that there is no allegation in the indictment that the United States commissioner before whom the defendant appeared and took the false oath mentioned in the indictment had authority to administer the particular oath upon which the charge of perjury is based. The indictment is founded upon section 5392 of the Revised Statutes (U. S. Comp. St. 1901, p. 3653), which provides as follows:

"Every person who, having taken an oath before a competent tribunal, officer, or person in any case in which the law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury."

The authority of a United States commissioner to administer the oath and take the testimony of the defendant is found in section 2294 of

the Revised Statutes, as amended by Act March 4, 1904, c. 394, 33 Stat. 59 (U. S. Comp. St. Supp. 1907, p. 467), as follows:

"That hereafter all proofs, affidavits, and oaths of any kind whatsoever required to be made by applicants and entrymen under the homestead, preemption, timber culture, desert land, and timber and stone acts, may, in addition to those now authorized to take such affidavits, proofs, and oaths, be made before any United States commissioner * * * in the county, parish, or land district in which the lands are situated."

The charge in the indictment is that the defendant "came in person before James S. Stewart, who was then and there the duly appointed, qualified, and acting United States commissioner for the district of Oregon, and who was then and there an officer, who was authorized by the laws of the United States to administer *an* oath and to take the testimony of witnesses in the matter of the application of a claimant to make final proof upon a homestead entry of public lands of the United States." The objection to this allegation is that it is the mere statement of the commissioner's general authority to administer oaths in the matter of homestead proofs; that under Act March 3, 1879, c. 192, 20 Stat. 472 (U. S. Comp. St. 1901, p. 1392), there are certain preliminary proceedings required to be taken by the homestead claimant before the commissioner has authority to take proof or administer an oath in the final homestead entry; that the indictment does not set forth these preliminary proceedings; and that, therefore, it does not appear that the commissioner had authority to administer the oath in this particular case. The only other alternative, it is contended, was that the indictment should have been in the form prescribed by section 5396 of the Revised Statutes, which would have been sufficient had it alleged that the commissioner had authority to administer *said oath*; that is to say, the oath that was required to be taken in that case at that time.

In our opinion the indictment is not open to the objection urged against it. It is not only alleged that the commissioner was an officer who was authorized by the laws of the United States to administer an oath and take testimony of witnesses in the matter of the application of a claimant to make final proof upon a homestead entry, but it is alleged that the commissioner "was then and there engaged in taking and hearing testimony in the matter of the application of Charles A. Watson, late of said district of Oregon, to make final proof in support of his homestead entry," and the particulars relating to the land, its location, and Watson's homestead filing upon the land and the making of final proof in this particular case are set out in the indictment, from which it appears that the proceeding had reached that stage when the claimant was entitled to make final proof, and it is alleged "that it then and there became, and was, material that the said James S. Stewart, as such United States commissioner for the district of Oregon and the register and receiver of the United States Land Office at The Dalles in said district of Oregon, should know and be informed from and by the said testimony whether the said Charles A. Watson had settled and resided upon and improved or cultivated the said lands so described, as required by the homestead laws of the United States," etc., and that the defendant made oath before the commissioner "of and concerning the truth of the matter contained

in said testimony so subscribed by him," and so, being sworn, "then and there, to prevent the said James S. Stewart, United States commissioner for the district of Oregon, and the said register and receiver of the United States Land Office at The Dalles, in said district of Oregon, from knowing the true facts and circumstances pertaining to the settlement and residence of the said Charles A. Watson upon, and his cultivation and improvement of the said lands * * * willfully, corruptly, and falsely, and contrary to his said oath did depose and swear as in said testimony set forth, of and concerning the material facts aforesaid, and did state and subscribe material matters which he did not then believe to be true." And it is further alleged that the defendant, in and by his said testimony and upon his oath aforesaid, in a case in which the law of the United States authorized an oath to be administered, did unlawfully and willfully, and contrary to said oath, state material matters which he did not believe to be true. From these allegations setting forth the general authority of the commissioner to administer an oath and take testimony in this class of cases and the statement of the proceedings before the commissioner in which he was engaged in taking and hearing testimony the court will take judicial notice that the commissioner had competent authority to administer the oath to the defendant in this particular proceeding and in this particular case.

The objection that it is not sufficiently alleged in the indictment that defendant's testimony was material is also without merit. The reference already made to the allegations of the indictment shows that it distinctly appears therefrom that defendant's testimony was material to the inquiry before the commissioner and the register and receiver of the land office as to whether Watson had complied with the law with respect to his homestead claim.

It is assigned as error that the court permitted the prosecution to prove certain oral statements made by Watson tending to show that Watson did not reside on the homestead claimed by him during the time stated in his homestead proof. It is contended that the admission of these statements is contrary to the rule excluding hearsay evidence, except in certain circumstances not material to this case. The objection relates to the testimony of the witnesses Putnam and Shepard. These two witnesses were permitted to testify, over the objections of the defendant, as to conversations with Watson, the first at Portland, Or., in April, 1903, and the second at Greenville, Or., a place west of Portland, in 1901. When these conversations took place, Watson was not residing on the land claimed by him as a homestead. The indictment charged that the defendant had testified in 1904 that Watson had established his residence on the land claimed as a homestead in 1898, and had since resided there continuously, except between July and October, 1904. The question of fact for the jury to ascertain was whether this sworn statement of the defendant was true or not, and evidence as to the residence of Watson during 1898 to 1904 was relevant to that inquiry. . It follows that evidence of the fact that from 1901 to 1903 he was absent from the land claimed by him as a homestead was also material and relevant. The United States requires absolute good faith on the part of the settler in the

occupation of public land for the purpose of acquiring title thereto under the homestead law. No mere pretense of establishing a residence upon the land or occasional visits to it will answer the requirement. The acts of occupation must be with the intention of actually residing upon the land, and hence it follows that under the law residence upon a homestead claimed is a combination of act and intent. With respect to the acts of Watson relating to his residence or lack of residence upon the claim evidence was admitted upon the trial and this evidence is not now a matter of controversy. The only question now is whether his declarations connected with such acts and relating to his lack of residence upon the land were also admissible in evidence. We think they were, as part of the res gestæ. In Lund v. Tyngsborough, 63 Mass. 36, the court, in discussing this question, said:

"The main transaction is not necessarily confined to a particular point of time, but may extend over a longer or shorter period, according to the nature and character of the transaction. Thus, where a debtor leaves his house to avoid his creditors, which is an act of bankruptcy, and goes abroad, and continues abroad, the act of bankruptcy continues during the continuance abroad for this purpose. * * * Perhaps the most common and largest class of cases in which declarations are admissible is that in which the state of mind or motive with which any particular act is done is the subject of inquiry. Thus, where the question is as to the motive of a debtor in leaving his house and going and remaining abroad, so as to determine whether or not an act of bankruptcy is committed, his declarations when leaving his house and while remaining abroad, as to his motives for leaving his house and for remaining abroad, are admissible in evidence. Such declarations, accompanying the act, clearly belong to the res gestæ. They are calculated to elucidate and explain the act and derive a degree of credit from the act."

In Viles v. Waltham, 157 Mass. 542, 32 N. E. 901, 34 Am. St. Rep. 311, the question was as to declarations concerning the domicile of the plaintiff in the action. The court said:

"The change in his place of abode might be temporary or permanent. It might indicate a change of domicile or not, according to the circumstances attending it. Declarations of a person accompanying a change of his abiding place have always been held competent to explain the change as a part of the res gestæ; but declarations in such cases are often admissible on a broader ground than as a part of the act of removing from one place to another. The intention of the person removing is competent to be proved as an independent fact, and anything which tends to show his intention in making the change may be introduced if it is free from objection in other particulars. * * * Declarations which indicate the state of mind of the declarant naturally have a legitimate tendency to show intention."

In Insurance Co. v. Mosley, 8 Wall. 397, 404–405, 19 L. Ed. 437, the Supreme Court of the United States had this to say in respect to declarations of this character:

"Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and give them their proper effect. As independent, explanatory, or corroborative evidence, it is often indispensable to the true administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury."

To the same effect is Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 296, 12 Sup. Ct. 909, 36 L. Ed. 706.

We think that under this rule the declarations of Watson relating to his residence and in connection with facts relating to the same subject were competent as evidence tending to show that it was not his intention to reside on the land.

It is assigned as error that the court admitted the evidence of the witness Morgan, over the objection of defendant. The evidence of this witness tended to show that in September, 1904, he made proof of his residence upon a homestead upon public lands in the same section of the state where Watson made his claim, and that the defendant was a witness on behalf of Morgan, and that Morgan never resided upon the land. This evidence was offered and admitted as tending to show knowledge, design, and system on the part of defendant in furnishing evidence in support of a fraudulent scheme to obtain title to public lands, and the evidence was so limited by the court in its instructions to the jury. In Van Gesner v. U. S., 153 Fed. 46, 55, 82 C. C. A. 180, evidence of this character was admitted to illustrate or establish the intent or motive of the defendant with respect to the particular act in controversy, and in the instructions to the jury the evidence was so limited. The admission of the testimony and the instructions of the court to the jury with respect thereto were affirmed by this court. The same case was taken to the Supreme Court of the United States (Williamson v. U. S., 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278), by the defendant Williamson, where the admission of this testimony was affirmed by that court. The rule in that case is applicable to the facts in this case.

The defendant called James S. Stewart, the United States commissioner, before whom the homestead proof was taken in this case. He was asked if he knew the general reputation of the defendant for truth and veracity in the community where he lived. He answered that he did, and, upon further inquiry, testified that it had been good. On cross-examination the witness was shown the final proof of the defendant taken before the witness in support of his own homestead claim. The proof was identified by the witness. The United States Attorney stated that he offered the evidence for the purpose of showing matter affecting the truth and veracity of the defendant; that, as a witness in his own behalf in a homestead proceeding, he swore to the fact that he had continuously resided on land other than the place where he actually resided. The evidence was admitted, over the objection of the defendant, and the witness was asked if he knew whether the defendant resided on the premises described in the homestead proof, but the witness testified that all he knew about it was what was stated in the homestead proof. If the admission of this evidence was error, it was clearly without prejudice, as it was not contradicted in any particular. So far as the evidence submitted to the jury was concerned, it stood as a truthful statement, and therefore without any prejudicial effect upon the jury as against the defendant.

Finding no prejudicial error in the record, the judgment of the court below is affirmed.