Hardin BENTON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7126.

United States Court of Appeals
Fourth Circuit.

Argued April 9, 1956.

Decided May 22, 1956.

Max F. Ferree and W. H. McElwee, No. Wilkesboro, N. C., for appellant.

H. Vernon Hart, Asst. U. S. Atty., Greensboro, N. C. (Edwin M. Stanley, U. S. Atty., Greensboro, N. C., on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and PAUL, District Judge.

SOPER, Circuit Judge.

Hardin Benton was indicted under 26 U.S.C. §§ 7302 and 5686 of the Internal Revenue Code for the unlawful possession of 1700 pounds of sugar, a pick-up truck and other property intended for use in violation of the Internal Revenue laws with reference to distilled spirits. He waived a jury and was tried by the District Judge, who found him guilty and sentenced him to four months in jail. He appealed to this Court and was admitted to bail pending the appeal since the Judge thought that the admission in evidence over the defendant's objection of testimony as to his bad reputation and his previous conviction of a similar offense raised arguable questions which should be reviewed by this Court.

The evidence was confined to a single incident which occurred after 10 o'clock P. M. on June 22, 1955. At that time a pick-up truck, rattling as if it were empty, was seen by an investigator to

enter the driveway of a house in Wilkes County in the Middle District of North Carolina, and turning off all the lights roll to the basement door of the house in the rear. A light went on in the rear of the house and after a few minutes was extinguished. Then the truck emerged and entered the street at a different point and drove slowly about 100 feet with the lights out and stopped. The truck did not rattle and it appeared to be loaded. In a short time the lights went on and the truck proceeded on the highway. The investigator then radioed to other Revenue agents a short distance away, who followed the truck a distance of five miles to the neighborhood of the defendant's house. They then arrested the defendant and seized the truck and found that it contained the sugar as described in the indictment.

When the defendant was arrested he stated that he had just purchased the sugar and had gotten it from another truck on the roadside at a point other than the premises which he was first seen to enter. He refused to tell from whom he had purchased the sugar or what he was going to do with it and he stated that if he had known that he was being followed he could have easily escaped.

This was all the evidence bearing on the substance of the crime charged in the indictment and there was no direct testimony as to the occupation of the defendant or the purpose for which the sugar had been acquired. It was merely shown that he resided in a rural district surrounded by farm lands. The Government, however, in order to support the charge that the property seized was intended to be used in violation of the liquor laws, offered in evidence the record of a prior conviction of the defendant on October 26, 1948, when he was sentenced to eight months in jail for conspiracy to violate the Internal Revenue statutes. The attorney for the Government stated at the time that the evidence was offered to show the defendant's intent. In addition, a Government witness was permitted to say that the defendant had the reputation of being part of a syndicate engaged in the operation of a large dis-

tillery and to have been occupied in driving race cars and in the whisky business. All of this testimony as to reputation and prior criminal conduct was taken over the objection of the defendant who did not testify as a witness and who offered no testimony in his own behalf.

■ We are of the opinion that it was error under the circumstances to admit evidence of the defendant's reputation for violating the liquor laws and to admit the evidence of a conviction which had taken place eight years before the offense which was being tried. The familiar rules with respect to these matters were set out in Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 218, 93 L.Ed. 168, where the Court said:

"Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over-persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The over-riding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."

Also well known is the qualification of this rule which is set out in Michelson v.

United States, supra, 335 U.S. at page 475, 69 S.Ct. at page 218, footnote 8, to the effect that evidence of other transactions or a course of fraudulent conduct may be admitted to establish fraudulent intent as an element of the crime charged. This principle was stated by us in Sutherland v. United States, 4 Cir., 92 F.2d 305, 308, where it was said:

"* * * Evidence of similar offenses committed at or about the same time is admissible when the question of intent, purpose, design, or knowledge is involved. See Breedin v. United States, 4 Cir., 73 F.2d 778, 780 and cases there cited. But the other offenses as to which evidence is offered must be so nearly related in time and place as to have some tendency to prove the commission of the crime charged. Simpkins v. United States, 4 Cir., 78 F.2d 594, 595, 597. Proof of finding whisky on defendant's premises ten months before the offense for which he was being tried had no reasonable tendency to prove that offense; but it did have a tendency, coupled with the conflicting statements attributed to him, to prejudice him greatly in the eyes of the jury."

Obviously this exception to the general rule has no relation to the present case. It has no bearing on the prohibition against the presentation by the prosecution of testimony as to the reputation of the defendant in a criminal case; and it offers no excuse for the introduction of evidence of a prior conviction of the defendant of a totally disconnected offense eight years before the commission of the crime charged in the indictment. See also Simpkins v. United States, 4 Cir., 78 F.2d 594, 597; Lovely v. United States, 4 Cir., 169 F.2d 386, 388; Shively v. United States, 4 Cir., 210 F.2d 131; Herman v. United States, 4 Cir., 220 F.2d 219, 224; Boyer v. United States, 76 U.S.App.D.C. 397, 132 F.2d 12.

It is contended that these rulings of the District Judge, even if erroneous, do not require a reversal of the judgment since the other evidence of the defendant's guilt was so strong that he was not prejudiced by the evidence wrongfully received. Such a holding was made by us in Snead v. United States, 4 Cir., 217 F.2d 912. This contention cannot be sustained under the facts of the pending case. The District Judge, in commenting upon the evidence at the time of the rendition of the verdict, made mention of the well-known fact that sugar is a necessary ingredient of moonshine liquor and pointed out that the defendant gave no reasonable explanation of any legitimate purpose for which he obtained the goods, but he also said that, in addition, the defendant not only had a reputation as a violator of the liquor laws but a record for past violations. Taking this statement into consideration, in connection with the announced purpose of the District Attorney in offering the evidence to show the criminal intent of the defendant, we do not think it is possible to say that the reputation and record of the defendant did not enter into the conclusions of the District Judge or contribute to the finding of guilt.

The judgment of the District Court will be reversed, and the case will be remanded for a new trial.

Reversed.