**Harold HUTSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14810.**

United States Court of Appeals
Ninth Circuit.

Oct. 30, 1956.

George B. McNabb, Jr., Fairbanks, Alaska, Harold Hutson, in pro. per., for appellant.

George M. Yeager, U. S. Atty., Philip W. Morgan, Asst. U. S. Atty., Fairbanks, Alaska, for appellee.

Before DENMAN, Chief Judge, and BONE and BARNES, Circuit Judges.

BARNES, Circuit Judge.

For several hours during the late evening of March 28th, 1954, the appellant (hereinafter called the defendant) was the only adult in a house located at 508 Sixth Street, in a certain Alaskan city. The house also was occupied by two children, Virginia, aged eleven, and her little sister, aged five. Earlier that evening another adult, Joe Baird, had been at the house. In fact, "Uncle Joe" lived there, and was caring for the children in their mother's absence. The two adults had been drinking.

Next to the house mentioned lived the Perrys, at 512 Sixth Street. The defendant lived at 516 Sixth Street. The record does not disclose the distance these houses were apart, but we assume they were on the same side of the street and within a reasonably short walking distance of one another.

Joe Baird and the defendant and Virginia went into town to get an "E" string for her violin. They also got more liquor. They then returned to Virginia's home. The two girls and a third played outside. About the time the two girls came into the house, Joe borrowed a truck that defendant had himself borrowed, and according to the defendant went to an unmentioned destination, one-half mile away, to be back in ten minutes. According to Virginia, Joe left for more liquor. Virginia "snuck" back to her room and went to bed. Her sister came to bed with her. Thereafter, she testified the defendant came to the children's room, asked her to kiss him, and after her refusal, required her to perform an unnatural act. The girl said the defendant told her he had a gun, but she said she did not see any gun. She testified she was afraid; she subsequently ran next door to awaken her neighbors, the Perrys, by screaming and pounding on their door.

When Mrs. Perry was aroused from sleep and came downstairs at 1:00 a. m. to ascertain the cause of the loud knocking, screaming and talking, she opened the door, let Virginia in, and heard a man's voice say:

"What do you want to go in and bother them for, honey?" She testified Virginia was "barefooted, no outer wraps on, no hat"—dishevelled, crying, hysterical. She said, "He tried to make me do it".

Mr. Perry arrived from his bedroom, at the front door, heard screaming and screeching, saw his wife open the door and saw Virginia come in. He heard a voice he recognized as the defendant's say, "What do you want to bother those people for at this time of night for, honey?" These were "the exact words".

He grabbed his pants and a crowbar and rushed to the defendant's house. When he got there, the defendant was in bed "covered up". The witness saw no clothes. "I had that crowbar in my hand * * * over my head * * *. I accused him of it." [Tr. p. 62]

"He made a remark that if, something about you give me hard trouble or something like that, I have got a twenty-five automatic under the pillow. That is when I was standing over him with a crowbar." [Tr. p. 64] Mr. Perry decided it was discreet to call the police rather than use the crowbar.

None of the government witnesses were cross-examined. The defense moved for a directed verdict of acquittal. It was argued at some length, and was denied.

The defendant testified in his own behalf. He entered Virginia's home at the invitation of his friend, Joe Baird, late in the evening of March 28th, 1954. Three little girls were present, playing about.

The defendant had borrowed a truck from a friend. He lent this truck to Joe Baird, who had said he would be back in ten minutes. About the time Joe Baird took the truck, Virginia and her five year old sister came into the house; said it was bedtime and asked the defendant to go home. The defendant said he couldn't go without his truck. Virginia went to bed in her bedroom. The defendant put the little girl to bed, "on the bed with her sister". This was twenty minutes after Joe had left.

The defendant testified he waited an hour or so, looking thru books.

He then asked Virginia, "where possibly could he have gone, that I had to have the truck."

Further, "when I was in the kitchen getting a drink someone came up on the porch. I called that to her attention."

The defendant was in the house "about three hours." The minor asked him three times to go home. "She got up mad because I wouldn't leave * * *, she ran by me out the door. I took out after her, tried to catch her." He followed her to Perrys'. "I asked her what was the matter with her, she said, 'get away, get away'." [Tr. p. 97]

"Q. Did you during the course of the evening touch that little girl? A. No sir, I didn't.

"Q. Did she touch you? A. No sir, had no cause to." [Tr. p. 97]

The defendant was not cross-examined. The defendant renewed his motion for a directed verdict, which was denied.

■ The defendant urges first, that his trial should have been continued because of his request therefor; secondly, that after the jury had been picked, a continuance should have been granted him. Both of these matters were peculiarly within the discretion of the trial court.

■ Defendant found himself in serious trouble on March 28, 1954. On April 14th, 1954 (as appears from appellee's brief) he was bound over after a preliminary hearing. He was indicted on January 7th, 1955. He was arraigned on January 18, 1955. His trial was set for April 18th, 1955. At 10:00 a. m., the hour the jury reported to try the case, the defendant for the first time, asked for a continuance. The trial court carefully heard the matter, considered his counsel's affidavits, and, we think properly, denied the motion. Whatever we may think of the merits of the two motions, we cannot reverse, save for an abuse of discretion. Williams v. United States, 9 Cir., 203 F.2d 85,

86, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408. Here, we find none.

■ Defendant's third and fourth points are that his motions for acquittal at the close of the government's case, and at the close of the entire case, should have been granted. He points out inconsistencies in the testimony, and that his "testimony went unchallenged," and hence "should be accepted as true." His whole approach requests us to weigh and compare the evidence. That is the exclusive province of the jury. Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, 742, certiorari denied 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645. That the jury did, and found him guilty on both counts:

I—Unnatural carnal copulation by means of the mouth.

II—Causing a minor to commit an act tending to cause such child to become a delinquent.

We cannot disturb such a verdict based on contradictory or conflicting testimony unless there is no substantial evidence of guilt. Adelman v. United States, 9 Cir., 1954, 216 F.2d 541, 543; Woodard Laboratories v. United States, 9 Cir., 1952, 198 F.2d 995, 998.

■■ Looking at the testimony most favorably to the government, as we must on this appeal, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed 680; Adelman v. United States, supra, we have no hesitancy in saying there was sufficient evidence to go to the jury, and hence, to support the jury's verdict.

As part of appellant's third point, he urges error based upon alleged lack of corroboration, particularly here where appellant urges that the principal testimony relied upon to convict is that of an accomplice.

Appellant misunderstands what constitutes an accomplice. By its accepted definition it can be only one

"who knowingly, voluntarily, and with common intent with the princi-

pal offender unites with him in the commission of the crime." McLendon v. United States, 8 Cir., 19 F.2d 465. Wharton's Criminal Evidence, Vol. 2, 12th Ed., p. 229.

It is true that even in many sex crimes such as adultery, fornication, incest or sodomy, one who participates in the crime is an accomplice in the prosecution of the other involved. But the general rule has well recognized exceptions, such as where the crime is committed thru force, threats, duress, fraud, or undue influence. The reason for this is obvious—the intent necessary to constitute one an accomplice cannot coexist with the overcoming of the will which is an essential ingredient of defendant's forcing or fraudulent acts, as for example, rape. The same rule applies to statutory rape—not because the prosecutrix did not consent, but because she is deemed in law incapable of consent.

For the same reason, in some jurisdictions, a minor who is under the age of consent, or one who is too young to understand the nature of his act, and hence too young to be criminally accountable for his actions, is not deemed an accomplice.

In California, for example, a boy over fourteen was held to be an accomplice to the act of sodomy committed upon him, while a boy under fourteen was held not to be an accomplice where the evidence did not show he knew the wrongfulness of the act. People v. Singh, 121 Cal.App. 107, 8 P.2d 898.

It is true, as appellant by inference points out, that some jurisdictions have passed statutes that convictions of certain sexual crimes require corroboration by evidence other than that of the female injured. Such is the case in the statute cited in appellant's Reply Brief—relating to the trial of one charged with inveigling, enticing, or taking away an unmarried female for purposes of prostitution, or one charged with seduction or illicit connection with an unmarried female. Section 66–13–61, A.C.L.A. 1949.

But here the defendant is charged with violation of Section 65–9–10 of A.C.L.A. in Count I, and § 65–9–11 of the same in Count II. As to neither of them has the legislature seen fit to require the corroboration essential under the statute cited by defendant.

There is a further valid reason why appellant's position is not well taken in this regard. The crime of unnatural carnal copulation is one for which some jurisdictions require corroboration, even in the absence of a specific statutory requirement. But that general rule has its execeptions, two of which are generally recognized—where the victim is of such an age as to be incapable of giving consent, or if the act is accomplished thru fear or duress.

See:

Mackey v. State, 160 Tex.Cr.R. 296, 269 S.W.2d 395.

Botello v. State, Tex.Cr.App., 275 S.W.2d 814.

In neither of these cases was the threat of force or the fear of the child any greater than that now before us.

It is to be recalled that here the girl testified she wanted to stay with the Perrys, over night, but "I was afraid to leave my sister alone." [Tr. p. 43] She "snuck" back to her room. When the act allegedly took place, the defendant told her he had a gun.

"Q. Will you state whether or not you were afraid when he (appellant) was in the [bed] room? A. (by complaining witness) Well, I was."

"Q. And why were you afraid? A. Well, I don't know. I am just not used to men coming into our house and doing that." [Tr. p. 48]

This testimony plus the corroborated and undisputed testimony of the manner that the little girl ran out of the house to the next door neighbors, is important.

"Q. Well, now do you know why the child ran out of the house? A. (by appellant) Well, she asked me to go home at different times."

"Q. How many times? A. Three times, three times, and she got up mad because I wouldn't leave. I couldn't. In the first place there wasn't anybody there with the children and in the second place I didn't have my truck. It was borrowed. She was plumb ornery about it, got up, ran by me out the door. I took out after her, tried to catch her. I don't know whether she had a fit or what, or was just in the heated anger."

Then appellant followed her to Mr. Perrys', and "asked what was the matter with her, (and) she says 'get away, get away'."

█ This testimony, plus that of the Perrys as to the complaining witness being dishevelled, crying and hysterical clearly establish that the little girl was in fear, at the time of the commission of the offense charged.

Of interest is an early case in California, when the court wrote short opinions. Appellant had been convicted of the infamous crime against nature. People v. Miller, 66 Cal. 468, 6 P. 99. The entire decision reads as follows:

"In this case it is contended that the complaining witness, a boy 13 years old, was an accomplice, whose testimony required corroboration, and as he was not corroborated, the conviction of the defendant was erroneous. But the uncontradicted testimony of the boy shows that he acted under the threats and coercion of the defendant. He was, therefore, not an accomplice, and as the evidence in the case was sufficient to sustain the verdict, the judgment and order must be affirmed. It is so ordered."

█ We do not here pass upon the question of whether the complainant, by reason of her age, was incapable of consenting to the alleged acts. It becomes unnecessary, in view of our position respecting the fear in which she was placed.

Defendant's fifth point related to the giving of Instruction 17. This specified the acts necessary to the commission of the offense charged in Count I. Apparently, the defendant believes the court should instruct as to an attempt to do the act, not the act itself, because of portions of the minor's statements which defendant claims indicated an attempt on his part, rather than an accomplished act.

Defendant was not charged with an attempt. No instruction was offered respecting an attempt. No objection was made to Instruction 17—other than the general statement of counsel, which read in full as follows:

"Mr. McNabb: Your Honor, I am objecting at this time to the instructions in that I feel that they are not sufficient in that they do not entirely instruct the jury as regards every aspect of this case, particularly in view of the motion which I made this morning in regard to the possibility of the prosecuting witness being an accomplice, the possibility, or the credit to be given to spontaneous utterances, those two things in particular I conceive of at the moment at which there is no instruction whatever.

"The Court: You wish to confer with Mr. Gove, possibly; you have any further exceptions?

"Mr. McNabb: That is sufficient, Judge."

█ Such an objection is not sufficient to enable defendant to raise the question he here attempts to raise, Kobey v. United States, 9 Cir., 208 F.2d 583, 588; Iva Ikuko Toguri D'Aguino v. United States, 9 Cir., 192 F.2d 338, 356, certiorari denied 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343, but had proper exception been taken by counsel, it would avail defendant nothing. The instruction was proper.

Finally, in point six, defendant states the instruction given to the jury at 10:30 p. m., during the course of its deliberations, "did not correctly state the law,"

and was "a mandate from the court to find the defendant guilty."

It was no mandate to convict, and it did correctly state the law. It re-emphasized defendant's rights. So that there may be no question as to its propriety, we quote it here in full:

"Additional Instructions to the Jury

"This is an important case. In all probability it cannot be tried better or more exhaustively than it has been on either side. It is desirable that you agree upon a verdict or verdicts. The Court does not want any juror to surrender his or her conscientious convictions. Each juror should perform his or her duty conscientiously and honestly and according to the law and the evidence. Although the verdict to which a juror agrees, of course, must be his or her own verdict, the result of his or her own convictions and not a mere acquiescence in the conclusions of other jurors, yet in order to bring twelve minds to a unanimous result you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other.

"You should consider that the case at some time must be decided and that you were selected in the same manner and from the same source from which any future jury must be, and there is no reason to suppose that the case will ever be submitted to a jury more intelligent, more impartial or more competent to decide it or that more or clearer evidence will be produced on one side or the other.

"In conferring together, you ought to pay proper respect to each others' opinions, with a disposition to be convinced by each others' arguments. On the one hand, if much the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself, who have heard the same evidence with the same attention, with an equal desire to arrive at the truth and under the sanctity of the same oath; and, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and to distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their co-jurors.

"In so stating, the Court again emphasizes that no juror should surrender his or her conscientious convictions and a verdict arrived at and to which a juror agrees must be his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusions of other jurors.

"I suggest that you again retire and carefully consider all of the evidence in the light of the Court's instructions, a copy of which you have with you, and I will send a copy of this additional instruction to you, and I am obliged to ask you that you again retire and the court will wait for further message from you." [R. p. 10, 11, 12]

It being a correct statement of the law, we assume there was no reason for objection to it by counsel for the defendant. There is no showing that defendant's counsel considered it objectionable, nor desired or attempted to object.

Defendant particularly urges that the court showed its bias by telling the jury: "This is an important case." It *was* an important case. Important to the defendant, and to the United

States. No error was committed; no prejudice to either side, in so characterizing it.

The judgment as to both counts, is Affirmed.

Affirmed.