**Thomas Curtis BUSH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 15693.

United States Court of Appeals Ninth Circuit.

June 2, 1959.

484

Thomas Curtis Bush, Texarkana, Tex., in pro. per. also brief by court appointed counsel Arthur Warner, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., T. Conrad Judd, Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was convicted by a jury of violating 18 U.S.C. § 2421, which prohibits knowingly transporting a woman in interstate commerce for prostitution or any other immoral purpose. A new trial was denied appellant, and he was sentenced to three and one-half years imprisonment.

Transportation of the seventeen year old complaining witness in an auto owned by defendant from Texas to California was freely admitted by defendant. The two were accompanied on the trip by the defendant's wife. The latter was a prostitute, known to be such by defendant before he married her, and to his knowledge, engaged in that profession at the Dixie Hotel in Beaumont, Texas, when defendant first met the complaining witness in Dallas, Texas.

The fact that the complaining witness engaged in prostitution immediately after her arrival jointly with defendant and his wife, in California, is likewise undisputed. Whether or not the complaining witness and the defendant engaged in immoral acts on the trip to, and

after arrival within, California is disputed.

██ Because of this undisputed testimony, much of it given by defendant himself, the sole issue remaining for solution was the intent of defendant—did he have the intent, purpose and motive in bringing the complaining witness to California to have her engage in immoral practices? This, of course, was an essential constituent element of the offense charged. Dunn v. United States, 10 Cir., 1951, 190 F.2d 496. It is not necessary that such intent be the sole and single purpose of the transportation, if such purpose and intent was one of the reasons for the transportation. Masse v. United States, 5 Cir., 1954, 210 F.2d 418, certiorari denied 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105.

It was defendant's position that he was the innocent victim of the complaining witness, that he had merely aided her to come to California from Texas to visit friends. According to defendant's trial counsel, "the girl herself duped the defendant as a professional prostitute and tried to lure him into an entrapment * * * to get out of some troubles of her own."

Such a defense when urged, caused the trial court to express surprise. "Do you mean to say," said the trial judge "that this defendant here is an innocent individual that has been duped by this young girl?" This, and other statements of the trial court, will be considered later.

██ With respect to the conflicting stories told by the principals as to the defendant's purpose and intent, it is sufficient to state that they presented a question of fact to be passed upon by the jury at the time of trial, and by the trial judge on the motion for new trial. Such a determination of fact is binding on this Court unless clearly erroneous. Bryson v. United States, 9 Cir., 1956, 238 F.2d 657, 662, certiorari denied 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed. 2d 34; Hutson v. United States, 9 Cir., 1956, 238 F.2d 167, 170; Adolfson v. United States, 9 Cir., 1947, 159 F.2d 883, certiorari denied 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836. Cf., Fed. R.Civ.P. 52(a), 28 U.S.C.A. We need do no more than to recite some of the more important undisputed facts to conclude that they, together with the logical inferences to be drawn therefrom, clearly justified the verdict of guilty.[1]

1. The defendant testified that he saw the complaining witness four times socially before he took her to the hotel in Beaumont where his wife worked at her profession. Defendant likewise testified he told the complaining witness his wife was a prostitute in his first conversation with the complaining witness. Having previously been convicted of a crime in Texas, and having been arrested in Texas over two hundred times from 1950 to 1953, defendant, at these first meetings, told the complaining witness he would go to California with her, but only if his wife went along. According to defendant, the complaining witness said she wanted to be a prostitute, whereupon he said: "You are not going to involve me."

However, the complaining witness went to Beaumont, Texas, to enter a house of prostitution. She testified the defendant took her there by plane. He denied this. But he went to Beaumont, to the hotel where his wife and the complaining witness were both working their profession. From Beaumont, the three went to Houston where the three occupied one bedroom. The three did the same in Dallas, Texas, and on the trip west. On these occasions the defendant had sexual relations with the complaining witness. He admitted such relations, but did not recall if it had occurred more than once.

When the trio arrived in California, the defendant's wife entered a house of prostitution. The complaining witness went to the Alhambra Hotel in San Pedro, the same house of prostitution in which defendant's wife had formerly been an inmate. The defendant twice took clothes to the complaining witness at this house of prostitution. After the complaining witness left the Alhambra Hotel, the defendant picked up her clothes at the Alhambra Hotel.

Prior to 1954 the defendant testified he had been connected with prostitution, was associated with it, and "might have" told the F.B.I. agent he was a "pimp."

We have considered principally hereinabove the defendant's testimony. It proves a strong circumstantial case against defendant. But the evidence of other witnesses was corroborative.

This appeal originally presented to this Court two briefs for appellant; one presented by defendant in pro. per. and one by his counsel.[2] We postponed the hearing of this appeal at defendant's suggestion[3] until we were certain that the defendant was properly represented by counsel of his choice and was satisfied with that representation and satisfied to have such counsel proceed with the appeal.[4]

On this appeal three principal matters are urged:

(1) Misconduct of the trial court in making comments prejudicial to defendant.

(2) Error in the admission of evidence.

(3) Error in denial of defendant's motion to require the production of certain "make-sheets" by the prosecution.

[4] Defendant points out some twenty-two places in the transcript where the court made some ruling, statement, or comment, indicating that the defendant's counsel was unduly prolonging his examination of witnesses or that he was harassing witnesses, or impugning the ability or integrity of defense counsel, or expressing "undue solicitude" for the prosecutrix, emphasizing the probability of her testimony, or that defense counsel was obtaining some personal satisfaction from requiring the witness to relate details concerning sexual acts.

From the record it appears obvious that the trial court resented defense counsel's trial tactics. He so expressed himself outside of the presence of the jury, and strongly implied it within the presence of the jury. But he also did two things of extreme importance: (1) He advised the jury on several occasions that his rulings and comments, if they raised any reflections on what was occurring in the courtroom, were reflections cast on defendant's counsel alone, not on defendant.[5] Shockley v. United

---

(1) A special agent for the F.B.I. testified the defendant told him he had been a pimp, "using that particular word." This defendant had denied.

(2) A friend and associate of the defendant's testified defendant had received $50 from defendant's wife by telegraph; that defendant had arranged for his wife to send $50 through the friend to defendant so defendant wouldn't get into trouble taking a prostitute's earnings. Defendant denied this.

(3) The testimony of the complaining witness alone if believed was sufficient to convict defendant. She testified at length and was subjected to a gruelling cross-examination. She told a convincing story of being introduced into the oldest profession. It was: The defendant took her by plane from Dallas to Houston to Beaumont. There he took her in a cab to the Beaumont Hotel. From there she took a cab, and he followed in another cab to the Hotel Dixie. She followed his instructions to enter the hotel by the rear stairway. She stayed there between two and three weeks where she acted as a prostitute. The defendant and the madam, a Mrs. Ainsworth, discussed at the hotel where the complaining witness worked her costume and personal hygiene. She left the hotel with defendant's wife who had likewise been acting as a prostitute at the same hotel, and they met the defendant at a drive-in. In Texas, and on the trip west, the three strange pilgrims slept in one bed at night, as they did in Long Beach on arrival. The defendant engaged in sexual relations with both his wife and the complaining witness.

After the first night in Long Beach, the defendant took the complaining witness to a San Pedro Hotel where she engaged in acts of prostitution. For this she received fifty per cent of the money earned and gave it to the defendant when he came to the hotel to get it. To that house of prostitution defendant took her clothes.

2. Not the same counsel on appeal as he who represented defendant below.

3. As contained in a letter to this Court dated February 17, 1959.

4. This Court received directly from defendant copy of a letter sent by defendant to his attorney, dated March 16, 1959, which stated in part, "I would be proud for you to argue the appeal on my behalf."

5. As an example, the following:
"The Court: Counsel, every question you ask this girl surprises me that she hasn't broken down before under the very humiliating situation we have here.

States, 9 Cir., 1948, 166 F.2d 704, 711–712. (2) The court refused to restrict defendant's counsel's cross-examination, either of the complaining witness, or of any other witness, in the slightest degree.[6] He so ruled favorably to defend-

"Mr. Graves: I assign his Honor's comments as misconduct and request withdrawal of the jury.

"The Court: Motion will be denied. But as I heretofore indicated to counsel, I have felt right along that counsel is trying to do his best to bait me into committing an error, and I probably have made some in the interest of justice.

"However, any statements that I made to counsel are not in any way to be considered by the jury as any evidence or in any way as any reflection upon the defendant whatsoever. If there is any reflection it is directed toward counsel.

"Mr. Graves: At this time I assign his Honor's comment as misconduct and request for a dismissal and withdrawal of the jury.

"The Court: The motion is denied."

6. As an example, the following:

"The Court: Now, counsel, just a moment. I think we have proceeded far enough along this line. This witness is not on trial.

"Mr. Graves: If the court please, this tends to go to the credibility of the witness.

"The Court: You have taken an hour in trying to establish the credibility of the witness. * * * If you can't establish it in that time you can't do it all week.

"Mr. Graves: Is the court telling me that I should conclude the cross examination?

"The Court: No, but I am telling you that you are doing your best to try to embarrass the witness who, according to her own statement, has seen the error of her way and you are doing your best to embarrass her, and I think it is the duty of the court to protect her somewhat.

"Mr. Graves: I understand your Honor's position, but however, may I call your Honor's attention to this fact. This girl testified that she was a prostitute and came across a state line with this defendant to be a prostitute. I am trying to test her credibility and show in fact she is a liar and that she is in fact—may I finish, your Honor,—that she was not a novice to the game and that she in fact was not the innocent girl that she says she was when she walked into the Beaumont Hotel and I think that is within reasonable grounds of cross examination.

"Mr. Jensen: If the court please—

"The Court: Just a moment, I will take care of that. It doesn't make any difference if she is the lowest person on earth if she was transported across the state line into California from Texas in violation of this statute and as set forth in the indictment. And the party who transported her knowing that, knowingly, is just as guilty as if she was as innocent as the day she was born.

"Mr. Graves: Correct, and I absolutely agree. If this gentleman knew she was a prostitute and transported her across the state line for the purpose of prostitution he stands convicted in this courtroom.

"My position is that this girl has made up a whole story and part of that story is that he said to her, 'I am transporting you across a state line for the purpose of prostitution.'

"The Court: You have been asking her about the most delicate things you can ask a woman.

"Mr. Graves: Yes, your Honor. I want to show the whole story.

"The Court: You may get a certain amount of personal satisfaction out of asking those questions but it doesn't tend to prove or disprove anything in this case.

"The Witness: Your Honor, how can—

"Mr. Graves: If your Honor please, I am going to assign your last statement as misconduct on the part of the court and move for a withdrawal of the jury at this time.

"The Court: The court will deny the motion and I will repeat it if necessary.

"Mr. Graves: I assign those remarks as misconduct and request the court to withdraw the jury and in the alternative to instruct the jury to disregard those remarks.

"The Court: You are not on trial; the defendant is on trial.

"Mr. Graves: That is what I thought but I am in doubt of that now.

"The Court: You have a delicate situation and you are trying your best to go just as far into the details of some of the most private affairs of people.

"Mr. Graves: I am trying to show this girl's credibility isn't worth two cents, your Honor. The whole story is a lie. That is my position.

"The Court: Well, that is a question for the jury to determine but we are not going on three days for you to determine that.

"Mr. Graves: May I be permitted to have a reasonable latitude to go into that?

ant despite his incredulity expressed as to the theory underlying the defense. He ruled in defendant's favor, on government's objections, far more often than he ruled against defendant. He did this despite conduct and statements on the part of defendant's counsel that verged upon, if they did not reach, impropriety.

The government might well have objected to the wide latitude the trial court permitted the defense counsel. While we cannot approve, as good judicial practice, all statements made by the trial judge, we find under the circumstances no clearly prejudicial error which affected defendant's right to a fair trial. Cf., D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, 367, certiorari denied 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343.

■ For a further important reason defendant cannot here complain. No objection was made to twenty of the twenty-two presently alleged errors. One of these alleged errors took place outside of the jury's presence. On three occasions defense counsel moved for a mistrial, once outside the presence of the jury.

Two of the three motions for a mistrial are quoted in full herein (n. 5, 6, *supra*). The third motion was made in chambers subsequent to the question hereinbefore quoted expressing surprise, made in open court by the trial judge, as to defense counsel's theory of the case. It came after defense counsel had said:

"I should be permitted to show that the state of mind of the defendant was totally innocent throughout. This girl herself duped the defendant as a professional prostitute and tried to lure him into an entrapment in this very court on these grounds to get out of some trouble of her own.

"The Court: Do you mean to say that this defendant here is an innocent individual that has been duped by this young girl?

"The Court: Certainly, but you have been asking questions about so-called tricks and how they perform them and

*    *    *    *    *    *

"Go ahead if that is your presumption."

Granted that this question might well have been left unasked in the presence of the jury, it still remained a *question* as to a legal theory. It was no comment on the evidence, or the credibility of any witness, nor on the credibility of the defendant, nor of his guilt or innocence of the crime with which he was charged. It was followed by a ruling which permitted defense counsel the widest latitude in attempting to establish the validity of his theory of defense.

■ Merely because a statement is made or question asked by court or counsel in the heat of a spirited trial which subsequently in the cool ivory tower of appellate court chambers seems inappropriate, does not make the stating nor the asking prejudicial error. Brown v. United States, 9 Cir., 1955, 222 F.2d 293, 297–298; D'Aquino v. United States, supra; Pacman v. United States, 9 Cir., 1944, 144 F.2d 562, certiorari denied 323 U.S. 786, 65 S.Ct. 278, 89 L.Ed. 627; Lewis v. United States, 6 Cir., 1926, 11 F. 2d 745, 747.

In a careful review of the whole record, we can find no prejudicial error created by any action of the trial court.

■ We come to appellant's second charged error—the introduction of testimony that defendant had made an extrajudicial admission he was a pimp.

On direct examination, defendant admitted over two hundred arrests in Texas in four years; eight "charges" and two convictions. On cross examination and without objection, defendant admitted that he "had had something to do with prostitution prior to 1954." On redirect examination by his own counsel he stated he had been "associated in this business" of prostitution, but "did not continue the business or associate in it" after his marriage in 1954. It was then that the

all that. None of us are interested. Most of us are too old to be interested."

girl later to become his wife was engaged in prostitution.

When defense objections, on the ground of immateriality for impeachment purposes were overruled to the question as to whether defendant had admitted to an F.B.I. agent he had once been a pimp, he stated he might have said so.[7]

There is no question but that there exists a general rule that evidence of appellant's previous misconduct or other criminal acts is inadmissible. Benton v. United States, 4 Cir., 1956, 233 F. 2d 491.

One well recognized exception is that proof of a prior conviction of a felony is admissible to impeach a witness' credibility. Meeks v. United States, 9 Cir., 1947, 163 F.2d 598; NLRB v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39, 46. See, McCormick, Evidence § 43 (1954). But no such question was here asked.

A second exception is to show intent,[8] design,[9] scheme,[10] motive[11] or knowledge.[12] United States v. Iacullo, 7 Cir., 1955, 226 F.2d 788, certiorari denied 350 U.S. 966, 76 S.Ct. 435, 100 L. Ed. 839. See, McCormick, Evidence § 157 (1954).

Here we must keep in mind the transportation from one state to another was an admitted fact; the immoral acts and commercialized vice of the witness after the trip were admitted; and the sole issue, by defendant's own theory, was whether defendant transported the prosecutrix for an immoral purpose knowingly, i e., what was his intent?

"When an act is equivocal in its nature, and may be criminal or honest according to the intent with which it is done, then other acts of the defendant, and his conduct on other occasions, may be shown in order to disclose the mastering purpose of the alleged criminal act." 1 Wharton, Criminal Evidence § 237, pp. 523–24 (12th ed., 1955); Lawrence v. United States, 9 Cir., 1947, 162 F.2d 156; Tedesco v. United States, 9 Cir., 1941, 118 F.2d 737.

Defendant also objects to the rebuttal testimony of the witness Stewart that the defendant had stated to him that he (the defendant) had previously been a pimp. If the cross-examination on the subject, and defendant's own testimony, were proper, as we have held, the rebuttal likewise was proper as possible impeachment. The defendant had refused to admit categorically or deny the alleged statement, merely saying he "might have said it" to Stewart.

Appellant's third point is that the court erred in refusing to require the government to produce "make sheets" of the prosecutrix, allegedly in the government's file. Neither the transcript at the trial nor the argument contained in the brief on appeal gives the matter sufficient substance to require us to do more than to say no error existed with respect thereto.

Affirmed.

JERTBERG, Circuit Judge.

I concur in the result.

7. "Q. By Mr. Jensen: I am asking you whether or not in November of 1955 you went to the local offices of the FBI here in Los Angeles and in substance or effect told this man who is now standing that you had prior to that interview been a pimp. A. In the State of California?
"Q. No, just a pimp. Did you make such a statement? A. Prior to 1954? Pardon me, I have been associated in that business.
"Q. Did you say in substance or effect that you had been a pimp? A. I may have."

8. United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 80, 156 A.L.R. 337; Tedesco v. United States, 9 Cir., 1941, 118 F.2d 737, 740; Heglin v. United States, 8 Cir., 1928, 27 F.2d 310.

9. Keith v. United States, 5 Cir., 1957, 250 F.2d 355; Barnard v. United States, 9 Cir., 1908, 162 F. 618, 626.

10. Lawrence v. United States, 9 Cir., 1947, 162 F.2d 156; Kirby v. United States, 8 Cir., 1947, 160 F.2d 373; United States v. Krulewitch, supra.

11. Kettenbach v. United States, 9 Cir., 1913, 202 F. 377, certiorari denied 229 U.S. 613, 33 S.Ct. 772, 57 L.Ed. 1352.

12. Barnard v. United States, supra.