**UNITED STATES of America**

v.

**Rachael BAKER, Defendant.**

United States District Court
S. D. New York.

Dec. 22, 1955.

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City, for plaintiff (Thomas M. Debevoise, II, New York City, of counsel).

William Canton, New York City, for defendant.

MURPHY, District Judge.

Defendant moves to dismiss both counts of an indictment charging her with a violation of 18 U.S.C. § 1001 and 8 U.S.C.A. § 1328.

■ The first count charges that the defendant, while in Canada "unlawfully, wilfully and knowingly did falsify and conceal a material fact in a matter within the jurisdiction of the Immigration and Naturalization Service of the United States Department of Justice." It does not appear in the indictment, although it is conceded by the U. S. Attorney, that the defendant is an alien. This raises the perplexing issue of whether or not the United States may indict and try an alien for a crime committed abroad. The precise question seems not to have been litigated before but we think the government does not possess such power.

■ "It is a general rule of criminal law that the crime must be committed within the territorial jurisdiction of the sovereignty seeking to try the offense in order to give that sovereign jurisdiction." Yenkichi Ito v. United States, 9 Cir., 1933, 64 F.2d 73, 75. Certain exceptions have been made to the general rule. While crimes against private individuals must still take place within the territory of the sovereign before the latter can properly assume jurisdiction, certain crimes directed toward the sovereign itself may be .tried within the ju-

risdiction even though committed without. United States v. Bowman, 1922, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149. Cf. American Banana Co. v. United Fruit Co., 1909, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826; Blackmer v. United States, 1932, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 516; and Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252. Jurisdiction in this latter situation is predicated upon the citizenship of the offender rather than the locus of the crime. Thus, an American citizen is subject to the laws of the United States wherever he may be. United States v. Bowman, supra. But an alien outside the territory of the sovereign is not so accountable. The problem was raised in the Bowman case but not decided since the alien defendant had not been apprehended.

The question of "whether States have a right to jurisdiction over acts of foreigners committed in foreign countries * * * ought to be answered in the negative. For at the time such criminal acts are committed the perpetrators are neither under the territorial nor under the personal supremacy of the States concerned. And a State can only require respect for its laws from such aliens as are permanently or transiently within its territory. No right for a State to extend its jurisdiction over acts of foreigners committed in foreign countries can be said to have grown up according to the Law of Nations, and the right of protection over citizens abroad held by every State would justify it in an intervention in case one of its citizens abroad should be required to stand his trial before the courts of another State for criminal acts which he did not commit during the time he was under the territorial supremacy of such State." Oppenheim, International Law, sec. 147 (3rd ed. 1920).

The Supreme Court, per Mr. Justice Story, seems to have adopted a similar view. "The laws of no nation can justly extend beyond its own territories, except so far as regards its own citizens. * * * And however general and com-prehensive the phrases used in our municipal laws may be, they must always be restricted in construction, to places and persons upon whom the legislature have authority and jurisdiction." The Apollon, 1824, 9 Wheat. 362, 22 U.S. 362, 6 L.Ed. 111. See also, Wheaton, International Law, p. 269 (6th ed. 1929).

In only one instance has an alien been held accountable by the United States for a crime committed abroad. In United States ex rel. Majka v. Palmer, 7 Cir., 1933, 67 F.2d 146, the alien was ordered deported for having made false statements under oath to an American Consul abroad when applying for a passport. But deporting an alien for perjury is far different from indicting and trying him for a crime committed abroad.

There is a line of decisions which might, on first reading, be thought to constitute authority for the government's position in this case. In Commonwealth v. Macloon, 1869, 101 Mass. 1, a British subject was convicted of manslaughter in Massachusetts when the crime occurred on a British vessel on the high seas. But in that case, although the injuries were inflicted outside the jurisdiction, the victim ultimately died within the sovereign's territory. Thus, jurisdiction was based on the fact that since the deceased actually died within the state, the crime occurred there. The court, however, was careful to point out that Massachusetts did not pretend to punish foreigners for crimes committed elsewhere.

A similar result was achieved by the Supreme Court in Strassheim v. Daily, 1911, 221 U.S. 280, 31 S.Ct. 558, 55 L. Ed. 735, wherein it was said that "acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he [the defendant] had been present at the effect, if the state should succeed in getting him within its power." 221 U.S. at page 285, 31 S.Ct. at page 560. But this type of case is materially different from the one at bar. Here the defendant's crime was complete the moment she

made the false statement; no further acts within the United States were necessary to complete the offense.

▇ Article 3, § 2 of the Constitution and 18 U.S.C. § 3238 do not, by their express terms, give the government authority to try an alien for a crime committed abroad. These provisions, along with the Sixth Amendment refer solely to venue and not to jurisdiction. They give no indication of any intent to enlarge the scope of the United States' judicial authority. This becomes abundantly clear when considered in the light of the United States' refusal to accept jurisdiction over aliens for crimes committed abroad, see Hackworth, Digest of International Law, sec. 135 (1941), and its strenuous objection when foreign countries have presumed to assert jurisdiction over American citizens for crimes committed here. Moore, International Law Digest, sec. 201 (1906).

▇ Defendant's motion directed to the first count of the indictment is accordingly granted.

▇ The second count of the indictment charges defendant with violating 8 U.S.C.A. § 1328 by maintaining, supporting, employing and harboring an alien for an immoral purpose, "to wit, the sale of an infant human being", an alien who had been imported into the United States for an immoral purpose. Whether or not this count of the indictment can stand depends upon the interpretation placed upon the words "for the purpose of prostitution or any other immoral purpose." The statute provides that: "The importation into the United States of any alien for the purpose of prostitution, or for any other immoral purpose, is forbidden. Whoever shall, directly or indirectly, import, or attempt to import into the United States any alien for the purpose of prostitution or for any other immoral purpose, or shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or shall keep, maintain, control, support, employ, or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, any alien, in pursuance of such illegal importation, shall, in every such case, be guilty of a felony * * *."

These words were carefully considered by the Supreme Court in United States v. Bitty, 1908, 208 U.S. 393, 28 S.Ct. 396, 52 L.Ed. 543. In holding that it was a violation of the statute to import an alien woman for the purpose of having her live with the defendant as a concubine, the court had the following to say—"It may be admitted that in accordance with the familiar rule of *ejusdem generis,* the immoral purpose referred to by the words 'any other immoral purpose' must be one of the same general class or kind as the particular purpose of 'prostitution' specified in the same clause of the statute. * * * We must assume that in using the words 'or for any other immoral purposes,' Congress had reference to the views commonly entertained among the people of the United States as to what is moral or immoral in the relations between man and woman in the matter of * * * intercourse. * * * The statute in question, it must be remembered, was intended to keep out of this country immigrants whose permanent residence here would not be desirable or for the common good." At pages 402, 403 of 208 U.S., at page 398 of 28 S.Ct.

In Cleveland v. United States, 1946, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12, the court had occasion to construe similar language (prostitution or debauchery, or any other immoral purpose) in the Mann Act, 18 U.S.C. § 2421, 63 Stat. 96. The rule of *ejusdem generis,* while employed to enlarge the scope of the statute to cover polygamy, was nevertheless held to restrict the general words to the same class as the specific words—unlawful sexual immoralities.

In view of these decisions, we cannot agree with the government's contention that section 1328 "covers the importation of any alien for the purpose of committing a crime involving substantial in-

**550**

jury to the community." The defendant's motion to dismiss is accordingly granted.

This is an order. No settlement is necessary.