**James Richard BAKER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17937.**

United States Court of Appeals Ninth Circuit.

Nov. 20, 1962.

Rehearing Denied Jan. 18, 1963.

Gordian S. Benes, Richard L. Daly, and Robert J. O'Hanlon, St. Louis, Mo., for appellant.

John W. Bonner, U. S. Atty., Melvin D. Close, Jr., and Thomas R. C. Wilson, III, Asst. U. S. Attys., Las Vegas, Nev., for appellee.

Before ORR, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

James Richard Baker was tried and convicted of knowingly transporting Carol Lou Thomas from Tiller, Oregon to Elko, Nevada, for the purpose of prostitution, in violation of the White Slave Traffic Act, 18 U.S.C. § 2421. He appeals, asserting that the trial court erred in admitting certain evidence, in failing to instruct the jury on certain points, and in erroneously instructing them as to other matters.

For the purposes of appeal the facts are established by the undisputed testimony of Miss Thomas. In the latter part of June, 1959, Miss Thomas met Baker in Elko, Nevada, while both were passengers on a bus. Baker got off at Reno, Nevada, but she continued on to Tracy, California, where she made her home with her sister and brother-in-law. In August, 1959, Baker visited Miss Thomas two or three days at Tracy.

About the middle of September, 1959, he returned to Tracy and told Miss Thomas that he was married but was getting a divorce. He asked her to go with him to Reno and to marry him after the divorce. She agreed and they left Tracy in his automobile. When they reached Sacramento, California, Baker suggested to her that she could make money for him by being a prostitute. They did not stop at Sacramento but drove on to Tiller, Oregon, where they stayed at his home.

Baker and Miss Thomas stayed in Tiller for three or four days and then drove in his automobile to Reno, Nevada, where they checked into a motel. She then went downtown and had her hair dyed platinum blonde, after which they drove to Elko. When they reached Elko, they went to Betty's D & D Club, arriving there about 3:00 o'clock A.M. After they entered the club Baker left Miss Thomas and went into another room with a girl who was present. When he returned he told Miss Thomas that Betty did not have any room for anybody, "but he knew they did because they were always needing girls."

The two then drove to a Joe Conforte's place in Wadsworth, Nevada, arriving there at 6:00 o'clock A.M. Baker told Miss Thomas he would see if they needed any girls, and went inside. When he returned to the automobile he told Miss Thomas to go inside with him. She did so and Baker introduced her to the maid who showed her to a room. Baker then left.

Miss Thomas worked as a prostitute in this house for four or five days, this being the first time she had done such work. She made two or three hundred dollars which she turned over to Baker when he returned at the end of this period.

Miss Thomas then went with Baker in his automobile to Winnemucca, Nevada, where she began working as a prostitute at Mickey's My Place bar. Baker then left. Four or five days later, Miss Thomas left this place and arranged to have two truck drivers take her to Sacramento. There she took a bus and returned to her sister's home in Tracy. Baker called for her a day or so later and took her to the Moonlight Ranch in Carson City, Nevada, where he arranged for her to work as a prostitute.

Four or five days later they left Carson City. Miss Thomas' testimony is confused as to what they did next. They may have driven directly to Peoria, Illinois. On the other hand they may have driven first to Caseyville, Illinois, where they picked up Baker's daughter at the house of his mother. If the latter is the case, they then took the girl to his father's home in Grant's Pass, Oregon, before going to Peoria. In either event, they reached Peoria about November 1, 1959. Baker arranged to have her work there

as a prostitute in a house operated by one Pam Miller. Miss Thomas worked there until January, 1960, when she returned to Oregon.

Appellant's first two points on appeal relate to the testimony of Pam Miller. Testifying for the Government over the objection of Baker's counsel, she corroborated the testimony of Miss Thomas concerning the events which occurred in Peoria. Appellant argues that Pam Miller's testimony should have been excluded as "substantive evidence of an independent crime."

■ Testimony concerning events in Peoria tended to prove an independent crime, since the indictment charged only a transportation between Tiller, Oregon and Elko, Nevada. It is the general rule that on the trial of a person accused of crime, proof of a distinct, independent offense is inadmissible. Tedesco v. United States, 9 Cir., 118 F.2d 737, 739–740.

But there are several exceptions to this rule, one being that proof of an independent crime may be produced to show the intent with which the alleged act was committed. Bush v. United States, 9 Cir., 267 F.2d 483, 489; Tedesco, above, at page 740 of 118 F.2d.

Appellant recognizes this exception and concedes that the testimony of Miss Thomas concerning the events which occurred in Peoria was admissible under it. But he draws the line at Pam Miller's testimony, arguing that hers was "substantive" in character.

■ In urging that Pam Miller's testimony was substantive in character, appellant seems to advance three independent arguments. One, which we shall first consider, is that it was introduced to prove the fact of the Tiller-Elko transportation rather than the purpose for which it was undertaken.

We perceive no reason for drawing such a distinction between the testimony of Miss Thomas and that of Pam Miller.

It is true that Government counsel did not expressly state, at the time the evidence was received, that the purpose of Pam Miller's testimony was to establish purpose with regard to the Tiller-Elko transportation. But this is the only reasonable inference in view of the fact that her testimony did no more than corroborate that of Miss Thomas, which was concededly limited to that purpose. Moreover, during argument to the jury, counsel for the Government referred to evidence concerning Peoria only as tending to establish intent.

■ Appellant's second argument in this connection is that Pam Miller's testimony did not tend to prove anything about his general disposition to have Miss Thomas work as a prostitute, and that it was only offered to prove that Miss Thomas had worked for Pam Miller in Peoria. This effort to corroborate Miss Thomas' testimony by introducing evidence of a collateral matter, it is argued, tended to confuse the issues being tried, and the evidence should have been excluded as irrelevant.

If Pam Miller had testified only to the fact that Miss Thomas had worked for her in Peoria, this argument might have some merit.[1] But she testified that Miss Thomas and appellant came to her house in Peoria together. This evidence was relevant to appellant's purpose in the Tiller-Elko transportation. It directly concerned appellant's conduct, from which the jury could draw inferences concerning his mental state.

■ Appellant's third argument appears to be that Pam Miller's testimony, being cumulative of that given by Miss Thomas, strained to the breaking point the proper application of the "intent" exception.

No doubt the amount or character of evidence concerning independent crimes, tendered under the "intent" exception to the general rule can, under stated circumstances, be such as to require a trial

1. See Minner v. United States, 10 Cir., 57 F.2d 506, 510. We need not decide whether under this assumed state of affairs a trial court's failure to exclude the testimony would be so prejudicial as to require the granting of a new trial.

court in the exercise of a sound discretion to call a halt. But under the circumstances of this case, the production of Pam Miller as an additional witness as to the Peoria episode does not seem unreasonable or unfair.[2] Moreover, it is unlikely that Baker was prejudiced thereby any more than he was already prejudiced by the undisputed and concededly admissible testimony of Miss Thomas concerning Baker's activities at Wadsworth, Winnemucca and Carson City, Nevada, and Peoria, Illinois.

The Court did not err in receiving the testimony of Pam Miller.

■ Appellant further argues, however, that if Pam Miller's testimony was admissible the jury should have been, but was not, instructed as to its limited purpose.

Such an instruction is proper and if the trial court is requested to give such an instruction it would be error to refuse. See Tedesco v. United States, 9 Cir., 118 F.2d 737, 740.

■ But although appellant, under Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A. had the right to file a written request for such an instruction, his then counsel did not do so.[3] Nor did counsel orally request that such an instruction be given. Moreover, he interposed no objection to the omission of such an instruction. Instead, trial counsel for appellant, when asked by the court before any instructions had been given, whether the instructions proposed to be given covered the points he had in mind, answered, "Yes, Your Honor." After all of the instructions had been given, counsel for appellant told the

court, "The defendant has no exceptions." [4]

It is provided in Rule 30 that no party may assign as error any portion of the charge or omission therefrom "unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Therefore the failure to instruct as to the limited purpose of the testimony from Pam Miller may not be a ground for reversal here unless we notice the matter as a plain error or defect affecting substantial rights, within the meaning of Rule 52(b), Federal Rules of Criminal Procedure.

Appellant asks us to so notice the failure to give an instruction concerning the limited application to be given Pam Miller's testimony.

The issues of the case were relatively simple. Baker presented no defense other than to put the Government on its proof. The testimony of Miss Thomas concerning the intent with which Baker took her from Tiller, Oregon to Elko, Nevada, was not disputed.[5] Appellant makes no complaint of the failure to instruct the jury as to the limited application to be given Miss Thomas' testimony concerning events subsequent to her departure from Elko. Pam Miller's testimony, as noted above, did no more than corroborate that of Miss Thomas in this respect. The omission in question did not constitute a failure to instruct on an essential element of the crime.[6]

During his closing argument to the jury counsel for the Government made it clear that evidence concerning the Peoria transaction bore only on the matter of intent. The trial court instructed the

---

**2.** The trial court demonstrated its alertness to the problem when it questioned the Government's effort to produce similar testimony from a third witness. Reacting to the court's misgivings, the Government withdrew this witness.

**3.** On this appeal appellant is represented by different counsel.

**4.** Counsel for appellant meant "objections." See Rule 30, referred to above. Under the Federal Rules of Criminal

Procedure, "exceptions" are unnecessary. See Rule 51.

**5.** Nor was any of her other testimony. Appellant produced no witnesses other than to recall an agent of the Federal Bureau of Investigation who had testified for the Government.

**6.** See Barry v. United States, 109 U.S. App.D.C. 301, 287 F.2d 340, 341, where such an omission was involved.

jury that "(t)he defendant is not on trial for any act or conduct not alleged in the indictment."

■ Considering together all of these circumstances we are convinced that Baker's substantial rights were not affected by the failure to give the instruction under consideration. We therefore decline to notice such omission as a plain error or defect within the meaning of Rule 52(b), and accordingly hold that it is not a ground for reversing the judgment under review.[7]

Appellant next argues that the district court erred because, in its instructions, the court assertedly failed to "hypothesize" the crime on the facts.

For the reasons stated above, our only inquiry here, and with regard to other questions concerning the instructions, to be discussed below, is whether plain error is involved.

We are not sure what appellant means by the words, "hypothesize" the crime or facts.

■ He may be referring to an asserted failure to instruct as to appellant's theory of the case. It is reversible error for a trial court to refuse, on request, to instruct as to a defendant's theory of the case, where the record contains evidentiary support for the theory.[8] But appellant had no theory of the case other than a denial of the charge, putting the Government on its proof. That theory was adequately presented when the court gave the usual instructions concerning the presumption of innocence and the necessity of the Government proving each element of the crime beyond

a reasonable doubt. See Hancock v. Commonwealth (Ky.) 262 S.W.2d 670, 671.

It follows that there was no error with regard to instructions on appellant's theory of the case, much less a plain error cognizable under Rule 52(b).

But, in complaining of the trial court's failure to "hypothesize" the crime or the facts, appellant may be arguing that it was incumbent upon the court, in its instruction, to make specific reference to the evidence, followed by instructions as to the law to be applied according to whether the jury finds such evidence to be true or false.

■ The extent to which the instructions on the law are to be related to hypothetical facts which the jury may or may not find to be established, rests in the sound discretion of the trial court. We find no abuse of discretion in this regard and certainly no plain error.

Appellant contends that the court erred in assertedly charging the jury, in substance, that it was reasonable for them to infer defendant's intent by what he did, as he was presumed to intend the natural consequences of his acts. The instruction in question is set out in the margin.[9]

■ Where, as here, the intent of the accused is an ingredient of the crime charged, its existence is a question of fact for the jury. It is error for the trial court to withdraw or prejudge such an issue by instructing the jury that the law raises a conclusive presumption of intent. Morissette v. United States, 342 U.S. 246, 275, 72 S.Ct. 240, 96 L.Ed. 288.

■ Moreover, where intent is a necessary element of the crime, it is error

---

7. In so disposing of this contention we do not decide whether the plain error rule may or should in any event be applied where counsel for defendant has affirmatively advised the court, prior to the giving of any instructions, that the instructions proposed to be given by the court cover all the points counsel had in mind.

8. Lutfy v. United States, 9 Cir., 198 F.2d 760; Levine v. United States, 104 U.S. App.D.C. 281, 261 F.2d 747.

9. "It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted, so unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

for the court to instruct the jury that it may, but is not required to, infer the requisite intent from an isolated fact. There can be no presumption as to intention which would permit the jury to make an assumption which all the evidence considered together does not logically establish. Morissette v. United States, at page 275, 72 S.Ct. at page 256, 96 L.Ed. 288.[10]

█ In the case before us the court did not, as in Morissette, instruct that unlawful intent must be conclusively presumed from an isolated fact established by the evidence. Nor was the jury told that it might presume unlawful intent from any isolated fact. The court in fact made no reference to a presumption relating to intent but, in the challenged instruction, spoke only of permissible inferences. As to the latter, the instruction did not, when considered in context with all of the instructions, advise that an inference of unlawful intent could be drawn from any isolated fact, or that such an inference could be drawn from an assumption which, we can say, all the evidence considered together does not logically establish.

█ The intent which must be proved as an essential element of the crime defined in 18 U.S.C. § 2421, is an intent that the female transported by the accused in interstate commerce shall, after such transportation, engage in the charged immoral conduct. Dunn v. United States, 10 Cir., 190 F.2d 496. This intent may be shown by circumstantial evidence. Hardie v. United States, 5 Cir., 208 F.2d 694.

█ Among the circumstances which may be considered in determining whether such an intent existed, all of which were present in this case, are that there were other similar activities by the accused, showing a pattern of conduct, Bush v. United States, 9 Cir., 267 F.2d 483; that, at the end of the journey the female was taken by the accused to a house of prostitution, Suslak v. United States, 9 Cir., 213 F. 913; and that the accused received money derived from the female's activity as a prostitute. Hardie v. United States, 5 Cir., 208 F.2d 694. In addition there was here the undisputed testimony of Miss Thomas that he proposed that she engage in prostitution, and that he made specific arrangements for such activities at several different establishments.

█ Neither at the trial nor in this court has appellant suggested any lawful motive in transporting Miss Thomas from Tiller, Oregon to Elko, Nevada. In view of the circumstances noted above, all of which are relevant in determining intent, the evidence tending to show unlawful intent was most compelling and entirely undisputed. We conclude that the questioned instruction was correct as far as it went. While the instruction could have been more definitive, there was no request in this direction nor any objection to the form given, and any deficiency in this regard did not constitute plain error under Rule 52(b).

Appellant contends that, in several other respects, the court in its instructions failed to define the issues and elements charged in the indictment and the individual terms used therein. He also contends that in at least one other respect the instructions inaccurately defined the terms used in the indictment. We have examined each of these matters and find no error or defect affecting appellant's substantial rights, within the meaning of the plain error rule.

Affirmed.

10. See also, Bloch v. United States, 9 Cir., 221 F.2d 786, 788–789; Wardlaw v. United States, 5 Cir., 203 F.2d 884, 887. In the latter case, involving a charge of wilfully and knowingly attempting to defeat and evade income taxes, the court said:

"* * * The intent involved in this offense is not inherent in the act itself, but is a specific intent involving bad purpose and evil motive and that specific intent must be proved by or clearly inferred from the evidence."