Cyril **CHARRON**, Appellant,

v.

The **UNITED STATES**,
Appellee.

No. 23136.

United States Court of Appeals
Ninth Circuit.

June 9, 1969.

Alan A. McDonald (argued), of Halverson, Applegate & McDonald, Yakima, Wash., for appellant.

Dean C. Smith (argued), U. S. Atty., Smithmoore P. Myers, U. S. Atty., Spokane, Wash., Richard L. Wiehl, Asst. U. S. Atty., Yakima, Wash., for appellee.

Before HAMLIN, ELY and CARTER, Circuit Judges.

HAMLIN, Circuit Judge:

Appellant Cyril Charron was convicted after a ·jury trial in the District Court for the Eastern District of Washington of a violation of 18 U.S.C. § 2314 (inducing a person to travel in interstate commerce in the execution of a fraudulent scheme for obtaining money by false pretenses).[1] Jurisdiction over his timely appeal is lodged in this court under 28 U.S.C. § 1291.

 The evidence need not be set out in detail; viewing it as we must in the light most favorable to the govern-

ment, the evidence was clearly sufficient to sustain the verdict. The record shows that appellant and another person, Bartland, pursuant to a scheme devised in 1963, induced the male complaining witness to travel from Mexico City, Mexico, to his home in the state of Washington, passing through the state of Oregon en route to and from Mexico City. The victim traveled to Washington to obtain the sum of $50,000, which on his return to Mexico he was induced to hand over to the appellant and Bartland because of their false statements and pretenses. The scheme was a variation on what has long been known as the "pigeon drop." Approximately five years after the conclusion of the scheme the appellant was arrested by agents of the United States Government in Detroit, Michigan, after a plane on which the appellant was traveling from Mexico City to Toronto, Canada, made a stop in that city. From Detroit he was brought to Washington, where the trial resulting in the conviction was held.

The appellant in his brief sets out five issues for review, as follows:

"(1) Did the Government fail to charge or prove the commission of a crime under 18 U.S.C. 2314, where admittedly all of the overt acts alleged to have been committed by appellant occurred beyond the territorial boundaries of the United States?

"(2) Did the Government's mode of acquiring custody and personal jurisdiction of appellant offend constitutional guarantees?

"(3) Was the appellant deprived of a fair trial by the conduct, participation and demeanor of the trial judge?

"(4) Did the trial court err in the admission of certain evidence violating the hearsay rule?

1. 18 U.S.C. § 2314 (second paragraph):
 "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more;" shall be punished as provided by law.

"(5) Did the trial court err in the refusal to give certain instructions requested by the appellant?"

Having carefully examined all of the appellant's contentions, we find no merit in them, and we consequently affirm the conviction.

 It is undisputed that the appellant was at no time physically in the United States while perpetrating the fraudulent scheme, and that while the other paragraphs of section 2314 refer to "interstate or foreign commerce," the paragraph with which the appellant was charged and convicted refers only to interstate commerce. However, the acts done in this case fit the language of the statute precisely: The appellant, having devised a scheme to obtain money by false pretenses, induced the victim to travel in interstate commerce in the execution of the scheme to defraud the victim out of money in excess of $5,000. This is not a case where the United States has charged an alien with a crime which was wholly completed outside the jurisdiction of the United States. See Yenkichi Ito v. United States, 64 F.2d 73 (9th Cir.1933); United States v. Baker, 136 F.Supp. 546 (N.Y.1955). In *Baker*, the defendant, a citizen of Canada, was charged with wilfully concealing a material fact in a matter within the jurisdiction of the Immigration and Naturalization Service of the United States; the defendant was in Canada when he concealed the fact. In *Baker* the crime was complete the moment the false statements were made outside the United States. Here, to complete the crime the victim was required to travel in interstate commerce to obtain the $50,000. Under section 2314 it is the interstate travel of the victim which is the foundation for jurisdiction. It is a well-established principle that "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect * * *." Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911).

See also United States v. Braverman, 376 F.2d 249 (2nd Cir. 1967); United States v. Steinberg, 62 F.2d 77 (2nd Cir.1932). The appellant knew that his victim would have to travel in interstate commerce if his scheme were to succeed. It follows that the government correctly proved a violation of the paragraph of section 2314 of which the appellant was charged and convicted.

 The objection to the government's mode of acquiring jurisdiction over the appellant is equally without merit. The record shows that in 1968 appellant traveled by air from Toronto, Canada, to Mexico City, Mexico, the plane making one stop en route at Detroit, Michigan. On the arrival of the plane at Mexico City, appellant alleges that at the instigation of the United States Government the Mexican officials refused to allow appellant to remain there. Instead, they placed him on a "turn around" flight to Toronto, which flight stopped at Detroit. When the plane arrived at Detroit, appellant alleges that under the guise of a "specially arranged" spot health inspection he was induced to alight from the plane and was then arrested by United States authorities and subsequently brought to the state of Washington for trial. Any contention that this procedure offended constitutional guarantees is foreclosed by the Supreme Court decision in Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). The Court there stated, "This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction'." 342 U.S. at 522, 72 S.Ct. at 571. Indeed, the facts in the instant case show that far less force was used to apprehend the appellant than was used in *Collins*. This court has consistently adhered to the principles of *Ker* and *Collins*. Hunt v. Eyman, 9 Cir., 405 F.2d 384, Dec. 27, 1968; Tynan v. Eyman, 371 F.2d 764

(9th Cir.1967). The appellant was properly brought before the district court for trial.

■ The charge that the conduct of the trial judge prejudiced the jury against the appellant and denied him a fair trial requires little comment. The victim of the scheme was 77 years old at the time of the trial, and at various times the trial judge interposed questions to make sure that the witness understood a question, and to insure that the judge understood his answers. Suffice it to say that we have carefully read and considered the transcript of the trial in light of the appellant's assertions, and we find the appellant's claims to be groundless.

■ The appellant's fourth claim of error involves the testimony of government witness Maurice Shevlin, who qualified as an expert on horse racing. As part of the fraudulent scheme, the appellant had represented to the victim that he worked for a certain horse racing association in Chicago, but that he had been forced to leave Chicago because of adverse publicity. To show that these facts were false, the government produced Mr. Shevlin, who testified that as an expert on horse racing in Illinois, he had never heard of the appellant, and that he had never heard of the association to which the appellant claimed to belong. Over objection, Mr. Shevlin was also permitted to testify that he had consulted the American Racing Manual and the files of the Chicago Tribune, and had found no mention either of the appellant or his racing association. Despite the appellant's contention that this latter testimony constitutes inadmissible hearsay, the testimony may be sustained on either of two grounds. First, testimony is hearsay only if it is admitted to prove the truth of the facts asserted. Since Shevlin had already testified as to his personal recollection, his testimony concerning the American Racing Manual and the Chicago Tribune was admissible to show the references he relied on in arriving at his personal recollection. Secondly, even if this testimony be re-

garded as hearsay, this type of testimony is admissible to prove a negative fact. "[A] witness may clearly testify as to his failure to find the records after a search. This, in fact, is frequently the only way in which a negative fact can be proved." McClanahan v. United States, 292 F.2d 630, 637 (5th Cir.1961). This rule is especially persuasive where, as here, the records on which the witness relied were available for examination by the defense. United States v. Paxton, 403 F.2d 631 (3rd Cir.1968). See also Keith v. United States, 250 F. 2d 355 (5th Cir.1957). There was no error in the admission of Shevlin's testimony.

■ Finally, the appellant urges that the trial court erred in refusing to give certain instructions requested by the defense. Two replies are a sufficient answer to most of the claims of error. First, some of the instructions refused by the trial judge were covered by other instructions; a defendant has no right to have a jury instructed precisely in the language he requests. Second, one instruction which appellant claims the court should have given is requested for the first time on this appeal. The trial court did not commit "plain error" by not giving this instruction on its own motion. F.R.Cr.P. Rule 52(a). One instruction requested by the appellant at the trial and refused by the court requires discussion. The appellant asked that the jury be instructed that a defendant cannot be convicted by proof of acts performed by a third person without the knowledge and consent of the defendant. The appellant claims this instruction was warranted because it covered his theory of the case: that Bartland's acts were done without the appellant's knowledge and consent. It is reversible error for a trial court to refuse, on request, to instruct as to a defendant's theory of his case, where the record contains evidentiary support for the theory. Baker v. United States, 310 F.2d 924 (9th Cir.1962). Here, however, the appellant did not testify at his trial; in fact, the defense called no wit-

nesses. Thus, the appellant's only "theory" of the case was that he was innocent. This issue is squarely covered by language in *Baker, supra:*

> "But appellant had no theory of the case other than a denial of the charge, putting the Government on its proof. That theory was adequately presented when the court gave the usual instructions ,concerning the presumption of innocence and the necessity of the Government proving each element of the crime beyond a reasonable doubt." 310 F.2d at 930.

Therefore, the trial judge correctly refused to give the requested instruction.

Our examination of the instructions given by the court convinces us that they fully and fairly covered the charge in the indictment.

We find no errors in the record, and the conviction is affirmed.