**MEDDIN BROS. PACKING CO.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 25885.

United States Court of Appeals
Fifth Circuit.

Oct. 3, 1969.

Rehearing Denied Dec. 10, 1969.

Fred S. Clark, Brannen, Clark & Hester, Savannah, Ga., for appellant.

Donald H. Fraser, U. S. Atty., Bruce B. Greene, Asst. U. S. Atty., Savannah, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE, Circuit Judge, and FISHER, District Judge.

FISHER, District Judge:

Appellant Meddin Bros. Packing Company, a Georgia corporation, was convicted at a trial by jury pursuant to a two-count indictment alleging violations of certain sections of the Federal Pure Food and Drug Act pertaining to the interstate shipment of cattle and horse meat unfit for human consumption.

In the first count of the indictment the Appellant was charged with offering for transportation from Savannah, Georgia, to Allentown, Pennsylvania, a quantity of cattle and horse meat, none of which had been inspected, examined and marked "Inspected and passed," in violation of Title 21, United States Code, former sections 78 and 96.[1]

In Count two appellant was charged with packing of horse or cow meat in containers previously used in packing poultry and failing to remove from the containers official federal poultry inspection marks, in violation of Title 21, United States Code, Section 458(e).

Before the 1967 recodification, Sections 71–99 of Title 21 comprised a Section of Chapter 4 of that Title, which was captioned, "Examination of Animals, Meat, and Meat Products used in Interstate or Foreign Commerce." These sections were concerned with meat and meat food products intended for human consumption. Their purpose, as set out in former Section 71, was to prevent "the use in interstate or foreign commerce of meat and meat food products which are unsound, unhealthful unwholesome, or otherwise unfit for human food." In this case all the evidence indicated that the shipment of meat here involved was at all times intended to be processed into dog food.[2] Apparently it was the contention of the government that this shipment should nonetheless have been inspected, examined and labeled in accordance with Section 78.[3]

1. Sections 71 through 91 of Title 21 were amended in 1967 and transferred to sections 603 through 623, respectively, of the same title. The indictment in this case was based upon incidents transpiring in June, 1965.

2. Mr. Gerald Meddin, President of Meddin Bros., testified that the company's business of slaughtering cattle and hogs generated left over tissue which is the raw material used in manufacturing dog food. Such product was considered "ineatable," and the company had contracted to sell it to the W. D. Vandenhoue Company of Atlanta, which was the exclusive purchasing agent for the Allen Products Company of Allentown, Penn., manufacturer of Alpo brand dog food. Mr. Meddin stated the shipment in question was sold to Vandenhoue pursuant to this arrangement. Record, pp. 115–117.

Mr. Carl V. Cribbs, the abattoir foreman at the Meddin Bros. Company plant, testified that he had personally supervised the packaging and loading of the shipment in question, that the boxes were marked as "ineatable foods," and that he knew the items were intended to be used in the manufacture of dog food. Record, pp. 147–148, 156, 159.

Dr. Harvey Hearn, a practicing veterinarian, who was at the time of the shipment in question director of the red meat inspection program for the Georgia State Department of Agriculture, testified that he personally saw the packaged meat that comprised the shipment in appellant's plant, that some of the boxes were marked "ineatable" and others were marked "ineatable-for dog food only." He also testified that he did not recall that any of these boxes had markings pertaining to poultry. Record, pp. 171, 177–178.

3. § 78. Transportation of carcasses, meat, or meat food products not properly inspected and marked.

"No person, firm, or corporation shall transport or offer for transportation, and no carrier of interstate or foreign

The trial judge endorsed this theory when he charged the jury as follows:

THE COURT: In other words, it has to be marked "Inspected and passed." It is illegal to ship that meat if it is not marked there. Does that answer your question?

A JUROR: That includes dog meat too?

THE COURT: It would include anything. It says meat or meat products.

A JUROR: In other words, that includes meat, period.

THE COURT: Period. That's right.[4]

■ We agree with appellant that the provisions of this article relating to inspection and labeling of meat products which are to be shipped in interstate commerce are properly construed as being inapplicable to this shipment of dog meat which was not intended for human consumption. Otherwise, the interstate shipment of meat admittedly to be used in the manufacture of dog food would have to comply with the same standard exacted for the interstate shipment of meat for human consumption. It is undoubtedly true that the Secretary is authorized under the provisions of this article to prescribe regulations respecting the preparation of dog food or other inedible products at a slaughtering or packing establishment at which inspection is maintained pursuant to this Article. Indeed, the Secretary has done so. See 9 C.F.R. § 318.12 (1959). These regulations are designed to insure that

the preparation of such products do not interfere with the maintenance of general sanitary conditions on the premises, and that they are not misrepresented as human food. Regulation 318.12(c) provides as follows:

"Dog food or other animal food prepared in whole or in part, from materials derived from cattle, sheep, swine, goats, or horses, shall be distinguished from articles of human food, so as to avoid the distribution of such animal food as human food. To accomplish this, labeling of hermetically sealed, retort processed conventional retail size containers, as for example, 'dog food' will be considered sufficient. If not in such containers, the product must not only be properly identified, but it must be of such character or so treated (denatured or decharacterized) as to be readily distinguishable from an article of human food. Dog food shall not be represented as being a human food."

The government's contention that such product as was involved here can only be shipped in interstate commerce if it has been duly marked "Inspected and passed" would necessarily mean that the raw material used in the manufacture of dog food, being an inedible by-product of the slaughtering of cattle and hogs, simply could not be transported in interstate commerce. This is so because Section 74 provides that this label shall only be applied to "meat food products" which are fit and suitable for human consumption. "Meat food products" which are found unfit for human consumption are to be labeled "Inspected and condemned" and destroyed for food

---

commerce shall transport or receive for transportation from one State or Territory or the District of Columbia to any other State or Territory or the District of Columbia, or to any place under the jurisdiction of the United States, or to any foreign country, any carcasses or parts thereof, meat, or meat food products thereof which have

not been inspected, examined, and marked as "Inspected and passed," in accordance with the terms of sections 71–91 of this title, and with the rules and regulations prescribed by the Secretary of Agriculture. Mar. 4, 1907, c. 2907, 34 Stat. 1262."

4. Record, p. 210.

purposes. The term "meat food products" is not defined by the statute. The Secretary has, by regulation, promulgated the following definition in 9 C.F.R. § 301.1(w):

> "*Meat food product.* Any article of food, or any article intended for or capable of being used as human food which is derived or prepared, in whole or in substantial and definite part, from any portion of any cattle, sheep, swine or goat, except such articles as organo-therapeutic substances, meat juices, meat extract and the like, which are only for medicinal purposes and are advertised only to the medical profession."

As noted above, there is no question that the shipment with which we are concerned was intended for use in the manufacture of dog food and not as human food. It may well be that the Secretary, considering such product to be "capable of being used as human food," might determine that its interstate shipment should be proscribed unless it is so denatured or decharacterized as to be readily distinguishable from human food. But the Secretary has not done so; rather his regulation, which is quoted above, provides that "labeling of hermetically sealed, retort processed, conventional retail size containers, as for example, 'dog food' *will be considered sufficient.*" (Emphasis added). Nowhere in the statute or regulations is evident a purpose to exclude from interstate commerce the raw product used in the manufacturing of dog food. We emphasize that this prosecution was not founded upon allegations that the appellant had failed to comply with the Secretary's regulations respecting the preparation and packaging of meat products used for dog food. Rather, it was charged that the appellant's preparation and packaging of such product failed to measure up to the standards exacted where meat intended for human consumption is to be shipped in interstate commerce.

The second count of the indictment is similarly defective. Appellant is charged thereunder with packing of the horse or cow meat in containers still bearing federal poultry inspection marks, contrary to the prohibition of Section 458(e). The relevant section of the Regulations is 9 C.F.R. § 317.10, which provides as follows:

> "Reuse of inspection marks; reuse of containers bearing marks of inspection, labels, etc.; requirements regarding. (a) No inspection legend which has been previously used shall be used again for the identification of any product, except as provided for in paragraph (b) of this section. (b) All stencils, marks, labels, or other devices on previously used containers, whether relating to any product or otherwise, shall be removed or obliterated before such containers are used for any product, unless such stencils, marks, labels or devices correctly indicate the article to be packed therein and such containers are refilled under the supervision of a Division employee."

We think it is clear that this section and regulation, like those made the basis of Count One, are designed to insure that unsuitable or adulterated food is not misrepresented as fit for human consumption. They are not intended to prohibit the interstate shipment of meat products intended for use in the manufacture of dog food which has been decharacterized or labeled in accordance with applicable regulations. They have no application to the facts in the case at bar.

In sum, we are convinced that the facts proved in this case are wholly inadequate to establish the offense charged in the indictment. This Court has held before that a criminal conviction which is not founded upon any

evidence competent to establish the offense charged, must be reversed.[5]

█ It is unnecessary for us to discuss the nineteen assignments of error advanced by the appellant pertaining to the rulings and actions of the trial judge. We deem it appropriate to observe, however, that we consider some of these assignments to be meritorious and sufficient of themselves to justify a reversal and new trial. For instance, the Court erred in refusing to charge the jury on the various elements of the alleged offenses, particularly the interstate character of the shipment.[6] Further, the Court erred in failing to give a defensive issue respecting Appellant's contention that the interstate shipment of meat was never intended for use other than the manufacture of dog food and not for human consumption.[7] However, many of the assignments of error are without merit, such as those pertaining to the question of proper arraignment, lack of evidence of the interstate character of the shipment, error in the admission of evidence, failure to grant a mistrial because of conduct of the prosecuting attorney, the returning of an "improper" verdict, failure to grant the right allocution prior to sentencing, and the type of sentence ordered.

For the reasons set out above the judgment of the District Court is reversed as to both counts and the cause is remanded with instruction to enter a judgment of acquittal.

---

5. Nagell v. United States, 392 F.2d 934, 937 (5th Cir. 1968); Clark v. United States, 293 F.2d 445, 448 (5th Cir. 1961); Edenfield v. United States, 112 F.2d 931, 932 (5th Cir. 1940); See also the following: Hemphill v. United States, 131 U.S. App.D.C. 46, 402 F.2d 187, 191 (Cir. 1968); United States v. Ellicott, 336 F. 2d 868, 871 (4th Cir. 1964); United States v. Silverman, 248 F.2d 671, 686 (2nd Cir. 1957); Mighell v. United States, 233 F.2d 731, 732 (10th Cir. 1956); Marte v. Government of Guam, 115 F.Supp. 524 (D.Guam, App.Div., 1953).

6. Mitchell v. United States, 129 U.S.App. D.C. 292, 394 F.2d 767 (D.C.Cir. 1968); United States v. Gordon, 242 F.2d 122, 126 (3rd Cir. 1957); Kenion v. Gill, 81 U.S.App.D.C. 96, 155 F.2d 176 (1946).

7. Salley v. United States, 122 U.S.App. D.C. 359, 353 F.2d 897, 898 (1965); Baker v. United States, 310 F.2d 924, 930 (9th Cir. 1962); Levine v. United States, 104 U.S.App.D.C. 281, 261 F.2d 747, 748 (D.C.Cir. 1958); Marson v. United States, 203 F.2d 904, 912 (6th Cir. 1953).